**Gerald DAVIS and Sheila Davis**

v.

**R. H. DWYER INDUSTRIES, INC., Curtron Industries, Inc. and Dynaforce Corporation, Defendants,**

v.

**B. F. GOODRICH COMPANY, Third-Party Defendant.**

Civ. A. No. 81–3886.

United States District Court, E. D. Pennsylvania.

Oct. 8, 1982.

---

Kenneth J. Lees, Philadelphia, Pa., for plaintiffs.

George D. Sheehan, Philadelphia, Pa., for Curtron.

Jonathan Herbst, Philadelphia, Pa., for Goodrich.

MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

After a jury trial in this strict liability case a verdict was returned by the jury in favor of the plaintiffs Gerald and Sheila Davis. Presently before the court is the motion of the third-party defendant B. F. Goodrich for judgment notwithstanding the verdict or, in the alternative, for a new trial.

Plaintiffs brought this action against Curtron Industries, Inc. ("Curtron") and two other defendants no longer a part of this case. Curtron filed a third-party complaint against B. F. Goodrich, Inc. ("Goodrich") for indemnity and/or contribution. Husband plaintiff alleged that on January 17, 1980, while engaged in the washing and drying of motor vehicles for the Hertz Corporation in a car wash operated by Hertz, was struck by an automobile moving through the car wash and operated by another Hertz employee, Edward Schmidt.

Hanging at the entrance to the wash bay was a Curtron Strip Door. This door consisted of poly vinyl chloride ("PVC") strips that were eight inches wide and hung from a device similar to a curtain rod. Defendant Goodrich manufactured the PVC material, called "KloroKlear", into rolls and defendant Curtron, after purchasing it, incorporated PVC into its strip door. Curtron sold the strip door to Hertz. Plaintiffs contended that due to a defect in the Curtron strip door material, Schmidt was unable to see through the curtains.

After a trial based on the theory of strict liability, the jury returned a verdict of liability against Goodrich, attributing no liability against Curtron. Damages were awarded in the amount of $200,000 for Gerald Davis and $15,000 for his wife, Sheila Davis.

It is Goodrich's contention that "Kloro-Klear" is not a defective product and further, the company's failure to warn of its propensity to become opaque, even if such a warning were necessary, was not a proximate cause of the accident. It therefore asks for judgment in its favor as a matter of law.

In deciding the defendant's motion for a judgment notwithstanding the verdict, this court must determine whether, as a matter of law, a verdict should have been directed for the defendant at the end of the trial. *Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205, 1210 (3d Cir. 1970).

Rule 50(b) of the Federal Rules of Civil Procedure provides that whenever a motion for directed verdict made at the close of all evidence is denied, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. *Fed.Proc., L.Ed.* § 62:692. In the case *sub judice,* the defendant made a timely motion for directed verdict which was denied.

■ To grant a motion for judgment n.o.v., the court must find as a matter of law that the facts adduced at trial fail to justify the verdict. *See, Woodward and Dickerson, Inc. v. Yoo Hoo Beverage Co.,* 502 F.Supp. 395, 397 (E.D.Pa.1980). "Such a motion 'may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment.'" *Id.,* quoting 5A Moore's Federal Practice § 50.07[2], at 50–77. The jury's verdict may be set aside only if manifest injustice will result if it were allowed to stand. For the reasons that follow, the court finds that the motion for judgment n.o.v. should be granted.

Plaintiffs' theory, based on the Restatement (Second) of Torts § 402A,[1] appears to

---

1. § 402A. "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

    (a) the seller is engaged in the business of selling such a product, and

    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

  (2) The rule stated in Subsection (1) applies although

    (a) the seller has exercised all possible care in the preparation and sale of his product, and

have been two-fold. They claimed that KloroKlear was a defective product. They also claimed that the failure to warn of KloroKlear's tendency to become opaque rendered it a defective product. Both arguments fail as a matter of law.

■ A critical factor in determining whether or not a product is defective is whether the product is "unreasonably dangerous." *Azzarello v. Black Brothers Co., Inc.*, 480 Pa. 547, 391 A.2d 1020, 1024 (1978). However, the use of the term "unreasonably dangerous" is no more than "a label to be used where it is determined that the risk of loss should be placed upon the supplier." *Id.* 391 A.2d at 1025. Because such a determination is a decision of social policy, it is a question of law to be decided by the judge. *Id.* 391 A.2d at 1026.

■ The manufacturer of a product, though not an insurer, is a guarantor of the safety of his product. *Id.* 391 A.2d at 1024. Both parties agree that PVC appears transparent when it is new. Plaintiffs' expert, Martin Maurer, testified that no one could see through the *new* curtains when looking from bright sunshine into the dark garage bay. Plaintiffs allege that this occurrence is a defect in the product. The accident, however, occurred after the curtains had yellowed and became scratched. The fact that the material deteriorated, the plaintiffs contend, also supports their contention that KloroKlear was defective when it was sold by Goodrich.

■ Such conditions are not defects as a matter of law. Whether the yellowing is caused by normal wear and tear or by an abnormal wear and tear, the curtain material cannot be said to be "unreasonably dangerous." It is not as though the curtain material was in a defective condition manifested by absorbing water so that the curtains became heavy and fell on the husband plaintiff. Nor is it that they adversely reacted to the heat in the wash bay and burned him. Rather, the curtains were difficult to see through from the first day, as

testified to by Gerald Davis and Schmidt. Recovery is not justified on the basis of the condition of the curtains.

■ Even if the court were to find the curtains defective, the evidence sufficiently establishes that Gerald Davis assumed the risk of standing behind the curtains. Although a plaintiff may not be barred from recovery in strict liability because of his own negligence, he is precluded from recovery if he knows of the specific defect eventually causing his injury and voluntarily proceeds to use the product with knowledge of the danger caused by the defects. *Berkebile v. Brantly Helicopter Corporation*, 462 Pa. 83, 337 A.2d 893, 901. The specific defect in this case is no more than the fact that a person could not see through the curtains. Plaintiff need not know the technological cause of the defect. Because Gerald Davis testified that he stood in the wash bay behind the curtains knowing they were opaque, he is held to have assumed the risk of injury.

■ This court must now turn to the question of whether KloroKlear was defective because it was sold without adequate warnings. "A seller must give such warnings and instructions as are required to inform the user of the possible risks and inherent limitations of his product." *Id.* at 1083, quoting *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975) (plurality opinion and Mr. Justice Pomeroy, concurring). In Pennsylvania, liability for failure to warn exists where the lack of a warning is "unreasonably dangerous and the proximate cause of the accident." *Greiner v. Volkswagenwerk Aktiengesellschaft*, 540 F.2d 85, 96–97 (3d Cir. 1976). The absence of either factor of "unreasonably dangerous" or "proximate cause" "is fatal to plaintiff's cause of action" thereby requiring a judgment for the defendant as a matter of law. *Greiner v. Volkswagenwerk Aktiengesellschaft*, 429 F.Supp. 495, 496 (E.D.Pa.1977). *Cf. Berkebile v. Brantly Helicopter Corp., supra.*

(b) the user or consumer has not bought the product from or entered into any contrac-

tual relation with the seller." Restatement (Second) of Torts, § 402A (1965).

The current law in Pennsylvania is unclear as to the nature of the legal issue involved in this area of causation. In the recently filed opinion of *Sherk v. Daisy-Heddon,* —— Pa. ——, 450 A.2d 615 (1982), the Supreme Court of Pennsylvania split over whether or not the issue involves proximate cause or cause in fact. That case was brought by the administratrix of the estate of James Sherk who was fatally injured when he was shot by defendant Robert Saenz who was using a pump-air rifle manufactured by defendant Daisy-Hedd. Justice Roberts, in an opinion in which Justice Hutchinson joined and Justice McDermott concurred in result, held that the plaintiff had not established that a failure to provide adequate warnings of the lethal propensity of the rifle was a proximate cause of the injury. Unfortunately for this court the opinion does not present a guideline on the determination of proximate cause. The Pennsylvania court, however, recognized that Saenz sufficiently appreciated the nature of the risk of misusing the rifle by pointing it at the decedent.

The plaintiffs in *Sherk* argued that had Robert Saenz's parents known of the lethal propensity of the rifle, they would not have allowed him to purchase the gun and the injury would not have occurred. The instruction manual accompanying the rifle did state "you must never point your gun toward any living thing . . . ." (*Sherk,* plurality opinion, footnote 5). However, the manual had not been read by either Saenz or his parents. The plurality opinion does not address whether or not the purchase would have been made had an adequate warning been present. However, it does imply that such a warning would have been irrelevant based on Mrs. Saenz's testimony over the manner in which the decision to purchase was made. *Sherk,* plurality opinion, 450 A.2d at 619.

Justice Hutchinson's concurring opinion points out that the plaintiff failed to show causation. But he asserts that the case deals with cause in fact rather than proximate cause. He holds that "[r]egardless of whether Daisy's warnings were inadequate, rendering the product defective under Section 402A, plaintiff failed to establish causation because Saenz and his parents knew the risks which an adequate warning would have described and acted without regard to them." *Sherk,* concurring opinion, 450 A.2d at 620.

In the case *sub judice,* plaintiffs' argument is indistinguishable. Their expert, Maurer, testified that appropriate warnings would have included the propensity of the product to become scratched and the need to use special maintenance procedures on the material. Plaintiffs allege that had Goodrich included such warnings, Hertz would not have bought the curtains and plaintiff Gerald Davis would not have been struck by the car. This argument fails for two reasons.

First, plaintiffs introduced no evidence that Hertz purchased the product for its transparency. In fact, no evidence was introduced that Hertz saw any sales literature or brochures from B. F. Goodrich or Curtron. Hertz appears to have made the purchase because the strip doors prevent the machines in the wash bay from freezing, by keeping cold air out and hot air in.

█ Second, just as Robert Saenz was aware of the risk of firing the rifle while pointing it toward the decedent, so was Schmidt, according to his own testimony, aware of his inability to see through the curtain before he drove through them. The lack of a warning concerning the curtain's propensity to become opaque did not in fact cause the accident. A warning would have served no purpose. It would have informed Hertz and its employees that the material could become opaque. That is information that anyone encountering the curtain would know by visual observation. The testimony of Schmidt and plaintiff Gerald Davis unequivocally establishes that each man was aware that the curtain was difficult to see through "from day one." Whether the appropriate test is proximate cause or cause-in-fact the result is the same. No causal connection exists between the accident and the lack of warnings.

Finally, even if this court were to find that an inadequate warning was the cause of the accident, plaintiff husband assumed the risk of injury. To repeat the testimony of plaintiff Davis, he was aware of the opaqueness of the curtain and, notwithstanding that knowledge, proceeded to stand behind the curtain, knowing also that automobiles would be driven through the curtain toward him.[2] His co-employee Schmidt, also aware of the visual limitation, drove through the curtains and struck husband plaintiff.

Plaintiffs also argue that it was false advertising that caused Hertz to buy the curtains and to fail to maintain them. However, this claim by plaintiffs is not covered under 402A which is plaintiffs' theory of liability.

Due to the disposition of Goodrich's motion for judgment n.o.v., the accompanying motion for a new trial need not be addressed. Further, this court has before it defendant Curtron's request for indemnity or contribution from B. F. Goodrich based on a Joint Tort Feasor Release Curtron executed with the plaintiffs. That request is denied based on the disposition of the judgment n.o.v.

### ORDER

The motion of the third-party defendant, B. F. Goodrich, for judgment n.o.v. is GRANTED.

The request of defendant Curtron for indemnification or contribution is DENIED.

Judgment is entered in favor of the third-party defendant, B. F. Goodrich, and against the plaintiffs.

IT IS SO ORDERED.

---

**2.** The employer Hertz had a program that entailed the washing of a certain number of cars every hour and this program was constantly monitored and adhered to.