516 A.2d 1226

**Rhea Jean THOMPSON and Lee Thompson and
Piper Aircraft Corporation**

**v.**

**MOTCH & MERRYWEATHER MACHINERY COMPANY, a
corporation, and Canron, Inc., a corporation.**

**Appeal of Rhea Jean THOMPSON and Lee Thompson.**

Superior Court of Pennsylvania.

Argued March 26, 1986.

Filed Oct. 22, 1986.

Paul E. Moses, Pittsburgh, for appellants.

Stephen M. Houghton, Pittsburgh, for appellees.

Before ROWLEY, WIEAND and DEL SOLE, JJ.

WIEAND, Judge:

Rhea Jean Thompson sustained injuries to her arm and hand when it became caught between dies of a power press while she was at work. She commenced an action seeking to impose strict liability for a defectively designed press against Canron, Inc. (Canron), the manufacturer, and Motch & Merryweather Machinery Co. (Motch), who had sold the press to her employer. The jury which heard the evidence returned a verdict for the defendants. A motion for new trial was denied, and judgment was entered on the verdict. This appeal followed by Mrs. Thompson and her husband.[1]

Mrs. Thompson was employed as a power press operator by Piper Aircraft Corporation (Piper), an airplane manufacturer. Throughout her employment by Piper, she had worked on a press manufactured by Canron and sold to Piper by Motch. The press was equipped with a hydraulically-operated ram, to which a die could be fitted. When the ram was lowered, the die would exert pressure against an opposing die attached to the bed of the machine. The machine was used by Piper primarily for the purpose of flattening and forming various sizes of metal sheets for use as airplane parts.

The press could be operated in one of two ways: (1) by pressing dual hand buttons; or (2) by depressing a foot pedal. The mode of operation could be determined by the operator by turning a key located near the hand buttons. In order to operate the press by use of the hand buttons, both buttons had to be depressed simultaneously. Use of the hand button control system prevented the operator from placing his or her hands between the dies while the machine was in operation. When the foot pedal was used, however,

---

1. Mrs. Thompson's husband had asserted a derivative claim for loss of his wife's consortium.

it was possible for an operator to put his or her hand in the work area while operating the press.

During the operation of the machine, it was not uncommon for objects being pressed to become dislodged from the die. The press, as designed and manufactured by Canron and sold to Piper, had contained no device to prevent the dislodged pieces from falling from the rear of the die to the floor. To retrieve these fallen objects, an operator would be required to walk around the press and pick up the material from the floor. Seeking to avert this inconvenience, Piper welded a metal apron onto the rear of the press sometime after purchase. The apron effectively prevented pieces from falling from the die to the floor. An operator using the machine as modified by Piper, therefore, was able to reach across the work area of the press to retrieve material which had fallen from the die onto the apron.

On May 4, 1978, Mrs. Thompson was operating the press by foot pedal, while using it to flatten quarter-sized metal discs. After each application of the ram, she would clear the die and reload it with her hands. While she was operating the machine, the ram descended on her right hand and wrist, inflicting injuries for which she claimed damages in the instant suit.

It was Mrs. Thompson's contention at trial that the press had been defectively designed because it lacked a guard or device which would protect against injury to the operator's hands while the ram was being activated by the foot pedal. To support this contention, she offered the testimony of Morton Markowitz, a mechanical engineer, who testified that there existed feasible devices which could have been employed to make safer the operation of the press via foot pedal. Inasmuch as it lacked one of these devices, he opined, the press was defective in design.

This testimony was rebutted by Peter Barrosso, a mechanical engineer called as an expert witness to testify on behalf of appellees. After testifying to the safety, efficiency, and cost limitations pertaining to each of the designs suggested by Thompson's expert witness, Barrosso said

that in his opinion no other safety feature would have made the press safer than it was. He concluded that the machine was not defective as designed and manufactured by Canron and sold by Motch.

If the power press were unsafe, the manufacturer and seller contended, the condition had been caused by Piper's installation of the metal apron. Defendants contended during trial that the addition of the metal apron had been a substantial change to the press which relieved them of liability for the injury suffered by Mrs. Thompson, who allegedly had attempted to reach material on the apron while the press was being operated by foot pedal. Circumstantial evidence demonstrated this possibility, because after the accident Thompson's hand and wrist were observed extending between the upper and lower die at the right rear corner of the press. From this evidence the jury was asked to infer that Mrs. Thompson had been attempting to reach around or over the die in order to retrieve fallen discs from the apron while the ram was descending.

At the conclusion of the trial, the trial judge instructed the jury on the issue of substantial change as follows:

The seller is responsible only for such defects as exist at the time the product leaves his control. The seller is not liable for defective conditions created by substantial changes in the product occurring after the product has been sold.

I think the contention is here that there may have been some kind of an apparatus put in the back of the press which the defendant contends may have caused the accident and this is a substantial change. This is up to you to determine whether there was a substantial change or whether there was not.

. . . .

... The seller is responsible only for such defects as exist at the time the product leaves his control.

Again, he is not reasonable [sic] for any substantial changes made in the product after the product has been sold. If you find that there was an alteration or substan-

tial change in the product, you must determine whether the seller and the manufacturer could have reasonably foreseen or expected such a change in alteration. Change or alteration. If the change is unexpected or unforeseen, then you should find the defendants not liable for injuries to the plaintiff.

N.T. at 1103, 1110. Following the completion of the charge, counsel for appellants noted two objections with respect to the court's instructions on substantial change:

The only exception I have, only two I have, number one, I except to the Court's charge concerning the defense of substantial change for the reason one, there isn't any evidence of any substantial change. Secondly, any such substantial change would have to be the legal cause of the harm.

N.T. at 1120. Thereafter, the court gave additional, corrected instructions to the jury as follows:

I talked to you about substantial change and I have been asked to charge you. I [will] do that[.] [I]f you do find there is a substantial change, you have to find that that is a legal cause of the injury to the plaintiffs. A substantial factor. If you find that there is a substantial change after the machine was delivered, then you have to find that there was a substantial factor in causing the injury also.

N.T. at 1127. These additional instructions were apparently deemed satisfactory, for no further objection was made.

During its deliberations, the jury requested the trial court to clarify its charge concerning "Manufacturer[']s liability on safety features at time of delivery." Accordingly, the court reiterated much of its charge on the issue of liability, including the following instructions on substantial change, which were given without objection:

A seller or manufacturer is responsible only for such defects as exist at the time the product leaves his control. The seller or manufacturer is not liable for substantial changes in the product occurring after the product has been sold. If you find an alteration or substantial change

in the product, you must determine where the manufacturer, whether the manufacturer-seller could have reasonably foreseen or expected such a change or alteration. If the change is unexpected or unforeseen, then you should find the defendants not liable for injuries to the plaintiff.

In addition to finding a substantial change, you have to find that this was a substantial factor or legal cause also in that connection.

■ Appellants argue on appeal that the trial court erred in charging the jury on the issue of substantial change. We disagree. The evidence showed unequivocally that a change had been made to the press after it had been sold. If the alteration could not reasonably have been foreseen by the manufacturer and if it were a superseding cause of the user's injury, the manufacturer would be relieved of liability even if there had been design defects existing at the time the press was delivered to the purchaser. 63 Am.Jur.2d, *Products Liability*, § 267. See: *Philadelphia National Bank v. Dow Chemical Co.*, 605 F.Supp. 60, 64 (E.D.Pa. 1985); *Dennis v. Ford Motor Co.*, 332 F.Supp. 901, 903 (W.D.Pa.1971), *aff'd*, 471 F.2d 733 (3d Cir.1973); *Burch v. Sears, Roebuck and Co.*, 320 Pa.Super. 444, 453, 467 A.2d 615, 620 (1983). Where the evidence on this issue is conflicting, the manufacturer's liability for injuries caused by an altered product is for the jury. 63 Am.Jur.2d, *Products Liability*, § 267. See: *Mazzi v. Greenlee Tool Co.*, 320 F.2d 821, 826 (2d Cir.1963); *Ford Motor Co. v. Mahone*, 205 F.2d 267, 269 (4th Cir.1953); *D'Antona v. Hampton Grinding Wheel Co.*, 225 Pa.Super. 120, 125, 310 A.2d 307, 310 (1973). The trial court in this case did not err by submitting the issue of substantial alteration to the jury.

■ With respect to the substance of the court's jury instructions, any errors therein have been waived. After an initial objection to the jury instructions, the court accepted plaintiffs' suggested addition and instructed the jury further that an alteration of the press would not relieve the manufacturer from liability unless the alteration had been a substantial factor in causing the injury. No objection was

made to the court's corrected instructions, and none was taken to the reiteration of those instructions in response to the jury's request for additional instructions.

The Supreme Court has warned that counsel will not be permitted to "sit idly by, tak[ing] his [or her] chances with instructions given at trial, and then, having lost the case, seek a new trial and second opportunity on the ground that the charge was prejudicial to his client." *Reardon v. Meehan,* 424 Pa. 460, 468, 227 A.2d 667, 672 (1967) quoting *Lobalzo v. Varoli,* 422 Pa. 5, 9, 220 A.2d 634, 635 (1966). See: *Enfield v. Stout,* 400 Pa. 6, 13–14, 161 A.2d 22, 26 (1960); *Lyons v. Wargo,* 386 Pa. 482, 485, 126 A.2d 411, 412 (1956). The failure of Thompson's counsel to object to the court's corrected instructions on the issue of substantial alteration of the press effectively precluded Thompson from assigning the court's instructions as a basis for a new trial. See: *Broxie v. Household Finance Co.,* 472 Pa. 373, 372 A.2d 741 (1977); *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974).

Appellants' contention that the verdict was contrary to the weight of the evidence must also be rejected.

> [T]he decision to either grant or deny a motion for new trial [on grounds that the verdict was against the weight of the evidence] is within the sound discretion of the trial court and will be reversed on appeal only if the appellate court determines the trial court palpably abused its discretion.... Our Supreme Court has held that a new trial should be granted only where the verdict is so contrary to the evidence as to shock one's sense of justice. *Burrell v. Philadelphia Electric Co.,* 438 Pa. 286, 265 A.2d 516 (1970). A new trial should not be granted where the evidence is conflicting and the jury might have found for either party, nor where the trial judge would have reached a different conclusion on the same facts.

*Myers v. Gold,* 277 Pa.Super. 66, 69, 419 A.2d 663, 664 (1980). See: *Austin v. Ridge,* 435 Pa. 1, 255 A.2d 123

(1969); *Brown v. McLean Trucking Co.*, 434 Pa. 427, 256 A.2d 606 (1969); *Carroll v. Pittsburgh*, 368 Pa. 436, 84 A.2d 505 (1951); *Buck v. Scott Township*, 325 Pa.Super. 148, 472 A.2d 691 (1984); *Mattox v. City of Philadelphia*, 308 Pa.Super. 111, 454 A.2d 46 (1982); *Eldridge v. Melcher*, 226 Pa.Super. 381, 313 A.2d 750 (1973).

*Hawthorne v. Dravo Corp., Keystone Division*, 352 Pa.Super. 359, 365, 508 A.2d 298, 301 (1986).

▆ The evidence in the instant case was more than adequate to support the jury's verdict. Indeed, the defendant-manufacturer and the seller presented substantial evidence by way of expert testimony that the power press had not been defective or unsafe for its intended use at the time of its design and manufacture by Canron and its sale by Motch. Although this testimony was contradicted by the opinion testimony of Thompson's expert, the conflict was for the jury to resolve. The manufacturer's evidence was adequate to permit the jury to find that the press had not been defectively designed or manufactured when sold to Piper. A reviewing court will not disturb the verdict of the jury merely because, in light of conflicting expert testimony, a different result might have been reached. In addition to evidence regarding the design of the press and the alteration made by the purchaser, evidence was presented which, if believed, permitted the jury to find that the press was being misused at the time Thompson sustained her injuries. In particular, the foreman on duty at the Piper plant on the day Mrs. Thompson was injured testified that the distance between the upper and lower dies of the press had been improperly adjusted, and that Mrs. Thompson had been using the foot pedal to operate the ram despite specific instructions to the contrary by her employer. In light of all of the evidence, we perceive no abuse of discretion in the trial court's determination that the verdict was not contrary to the weight of the evidence.

Judgment affirmed.