541 A.2d 749

**William W. MACKOWICK, Jr. and Margaret Mackowick, His Wife, Appellants,**

**v.**

**WESTINGHOUSE ELECTRIC CORPORATION.**

Superior Court of Pennsylvania.

Argued Feb. 17, 1988.

Filed April 29, 1988.

436

Maureen D. Harvey, Pittsburgh, for appellants.

Frederick N. Egler, Jr., Pittsburgh, for appellee.

Before BROSKY, WIEAND, McEWEN, OLSZEWSKI, BECK, TAMILIA, KELLY, POPOVICH and JOHNSON, JJ.

TAMILIA, Judge:

This is an appeal from a judgment of the Court of Common Pleas of Allegheny County in favor of the defendant, Westinghouse Electric Corporation, in a products liability action.

Appellants, William and Margaret Mackowick, are husband and wife. In December, 1982, William, a skilled electrician was installing additional capacitors in the switchgear room at Western Pennsylvania hospital. The room has high voltage warnings on its doors and is unlocked only for authorized persons. The capacitors already in use at the time were manufactured by Westinghouse and were enclosed in boxlike covers with cautionary warnings on their lids which were held on by screws.

During the installation, one of William's co-workers, Thomas McIntyre, removed the cover from a Westinghouse capacitor. On the removed lid was a warning to users that they should disconnect the breaker, wait five minutes, short the terminals and attach the terminals to the ground before handling. The top of the capacitor was approximately the height of William's waist.

At trial, McIntyre testified he had removed the lid of the energized capacitor to look into it to check the proper installation technique for the new capacitors. At that point, William came over with a screwdriver in his hand which he pointed into the capacitor box resulting in an explosive electrical flash, burning William. He brought this action, claiming Westinghouse's capacitor box was defective because it should have had a lockout system so that it would be de-energized whenever it was opened. His wife filed a derivative claim for loss of consortium.

Westinghouse's expert testified that flashover, or arcing as it is called in the trade, will not occur unless an object is within $^{40}/_{1000}$'s of an inch of the fuse. The trial court instructed the jury on assumption of risk though it refused to give the instruction requested by the plaintiffs. The jury returned a verdict for Westinghouse. William and his wife appealed to this Court.

Appellants present three issues for our review: (1) whether the trial court's instruction on assumption of risk was erroneous; (2) whether the court's instruction on liability was in error; and (3) whether the court erred in refusing to permit the introduction into evidence of models of alternative capacitor designs and whether the court erred in precluding certain cross-examination of Westinghouse's expert.

In the instant case, the court's jury charge provided in pertinent part:

> For you to find that a plaintiff assumed the risk of his injury, you must find that the plaintiff was aware of the danger presented by defendant's product and voluntarily proceeded to encounter the danger. The plaintiff must have realized the danger, but not necessarily the specific defect itself, just the danger.

The jury charge was adequate for the purposes of this case and precisely defines the ambit of risk of the plaintiff in relation to exposing himself to a dangerous condition.

The mandate of this Court is to view the facts in the light most favorable to the defendant as verdict winner and not reverse the trial court's Order absent an abuse of discretion

or error of law which controlled the outcome of the case. *Martin v. Johns–Manville Corp.*, 508 Pa. 154, 494 A.2d 1088 (1985); *Binder v. Jones & Laughlin Steel Corp.*, 360 Pa.Super. 390, 520 A.2d 863 (1987); *Bryant v. Girard Bank*, 358 Pa.Super. 335, 517 A.2d 968 (1986); *Fannin v. Cratty*, 331 Pa.Super. 326, 480 A.2d 1056 (1984).

██ A careful reading of the testimony elicited at trial showed clearly that the appellant, an experienced electrician of more than thirty years, fully understood the nature of arcing (flashover). The jury obviously found the testimony of Thomas McIntyre, his co-worker, (that appellant had used a screwdriver to point down into the capacitor) to be the facts of this case, contrary to appellant's testimony that he pointed with his finger. The jury also found, necessarily, that the expert called by Westinghouse was correct in asserting that arcing would occur if one approached within forty one-thousandths of an inch to the capacitor, which was so close as to be indistinguishable from "touching" it. He estimated that distance to be equivalent to the lead of a thick lead pencil or the gap of a spark plug. It is inconceivable that an electrician with the training and experience of the appellant would not realize that arcing can occur under exactly the circumstances involved in this case.

Assumption of the risk frequently occurs with persons who have extensive experience and training and, therefore, take greater chances than persons who are either laymen or not so experienced. The jurors obviously, in light of their own exposure with modern technology, could have concluded that danger of electric shock existed to anyone putting a screwdriver into a fuse box or any other electrical connection in the home, and from their own experience would be reasonably able to infer that a condition with such obvious potential for injury or death, as contained in the switchgear room, was such that an experienced electrician should not have been so reckless as to expose himself to likelihood of injury. Additionally, any person on the jury could conclude from experience with automobiles, once reference was made to a spark plug, that arcing occurs when a test is made to

determine if current is passing from the distributor to the spark plug by holding the cable a short distance from the plug to create an arc. These common experiences would belie in the jurors' minds the lack of subjective knowledge of an experienced electrician of a similar consequence under the facts of this case.

The appellant makes much of the fact that he would have had to know not only of the danger but was required to understand what specific danger existed. The problem with the rationale of the appellant is that he attempts to isolate the danger from the objective and subjective knowledge he had about the nature of the electrical equipment in the switchgear room. It is uncontested that the appellant had removed the lid to one of the Westinghouse capacitors several weeks prior to his accident when he and the fore-man were in the switch gear room reviewing the upcoming installation job. In doing so, he had to unfasten two bolts between which was the following warning: **"THIS CAPAC-ITOR CONTAINS BUILT–IN DISCHARGE RESISTERS. CAUTION: WAIT FIVE MINUTES AFTER DISCON-NECTING. THEN SHORT CIRCUIT THE TERMINALS AND GROUND THE CAPACITOR BEFORE HAN-DLING."** The testimony in the record establishes that not only did the appellant know of the specific danger, but the reason he went over to the box on the day of his accident was to point out to co-worker McIntyre the high voltage and extreme danger in going into the capacitor box. He testi-fied he knew the capacitor was there and that it contained four thousand volts and that he could get killed. His testimony was that he was concerned McIntyre might touch something or drop the lid inside and he was concerned that the capacitor was open. By his own testimony, appellant established he knew of the specific danger and, with the subjective knowledge that a person of his experience would have, it is inescapable that in pointing into the box with the screwdriver (or his finger), he subjected himself to the probability that arcing would occur and he would be injured. Even if he believed it was necessary to touch the fuse or capacitor to produce flashover, the uncontested expert testi-

mony that arcing would occur within forty one-thousandths of an inch of the fuse, means that he approached the fuse so closely with the screwdriver that it was indistinguishable from touching and no reasonable person would have done so.

This is not the type of product liability case in which a defect exists, unknown to the victim, upon which strict liability may be posited. Here, the product was not mechanically defective and the only manufacturing defect that could be alleged is inadequate warning as to the danger inherent in the product if not properly used. The warning contained on the lid of the capacitor box was designed to alert those professional persons, who had a reasonable basis for going into the box, of the specific steps necessary to discharge the capacitor *before it could be touched*. This warning was designed for electricians and was adequate to alert electricians to the specific danger—that is, the capacitor stored electricity and could not be handled safely even after the electricity was shut off until the necessary steps were taken to drain it of its charge. Under these conditions, with the current flowing, for an electrician to stick a screwdriver into the box, so close to the fuse that it would arc, can only be classified as an assumption of the risk.

Whether or not he knew of the specific danger and assumed the risk or acted as a reasonable person under the facts of this case was a jury question. The charge given to the jury to aid them in this determination, as well as all of the other instructions given to them by the trial judge, was more than adequate for this purpose. The charge as a whole, including that portion which refers to abnormal use, gave the jury appropriate direction and alternatives to guide them in their determination and provides no basis for reversal. *Boyle v. Pennsylvania Railroad Company*, 403 Pa. 614, 170 A.2d 865 (1961); *Geyer v. Steinbronn*, 351 Pa.Super. 536, 506 A.2d 901 (1986); *McGowan v. Devonshire Hall Apartments*, 278 Pa.Super. 229, 420 A.2d 514 (1980); *also see Commonwealth v. Rodriguez*, 343 Pa.Super. 486, 495 A.2d 569 (1985).

■ The trial court's charge covered the situation adequately and gave the jury the correct and legal basis upon which it could draw its conclusions in relation to the facts presented at trial. It is inconceivable that adding to the charge the final sentence requested by the appellant, "if you find that such warnings or instructions were not given, the defendant is liable for all harm caused thereby", would have changed the result or is substantially beyond that which was actually charged by the court so as to warrant a new trial. Appellant's primary contention as to refusal by the trial judge to give the charge was that it was included in the Standard Jury Instructions. These instructions are guides only and the trial judge is free to deviate from them or ignore them entirely. What is important is whether the charge as a whole provides a sufficient and correct legal basis to guide the jury in its deliberations. *Boyle, supra; Geyer, supra; Bell v. City of Philadelphia*, 341 Pa.Super. 534, 491 A.2d 1386 (1985).

Having resolved the first issue, assumption of the risk, in favor of the appellee, as to the following issues, whether the court's instruction on liability was in error, whether the court erred in refusing to permit the introduction into evidence the models of an alternative capacitor design, and whether the court erred in restricting certain cross-examination of the Westinghouse expert, we also find in favor of the appellee and accordingly affirm the jury verdict.

■ As to the refusal of the trial court to permit the use of a model by appellant's counsel to illustrate a possible alternative design which might have prevented this accident, it was properly denied by the trial judge as within his discretion on the basis that this was the introduction "of a specific design that this witness invents to show that he could make a better product than Westinghouse made." (T.T. 1/14–17/86, p. 158.) That was not the issue before the jury; the issue was whether the design in question was or was not defective.

The appellee's expert, while precluded from introducing the model, testified extensively as to all the information

contained in the model. It is evident from the record that all relevant exhibits, including a capacitor, warning, name plate, diagram and photographs, to mention a few, were introduced to aid the jury in its understanding of the case. These, with the accompanying explanation from the two experts, were more than adequate to present both appellant's and appellee's points of view.

■ In a similar vein, appellant attempted to show, through cross-examination of appellee's expert, that a cut-off switch was employed in a switchgear room to prevent anyone from going in until the switchgear was turned off and that a similar application should have been contained in the product design of the capacitor box. In refusing to permit this line of cross-examination of appellee's expert, the court properly limited exploration of a different product, designed for a different purpose, as not being relevant to the issue of the adequacy of the design of the capacitor system. We see no error in this holding.

Other issues may be construed as a battle between experts—Dr. Robert J. Cunitz, a psychologist in the field of human factors, and Robert T. Innis, a Westinghouse design engineer, who, among other things, designed capacitors. Conflicting testimony was given as to the adequacy of warnings, design and construction of the equipment in question. The jury heard them all and, within their perogative as jurors, selected the data that carried the greatest weight and credibility to them. *Thompson v. Motch & Merryweather Machinery*, 358 Pa.Super. 149, 516 A.2d 1226 (1986); *Mattox v. City of Philadelphia*, 308 Pa.Super. 111, 454 A.2d 46 (1982); *see also Heiney Will*, 455 Pa. 574, 318 A.2d 700 (1974). In addition, the expert for appellant testified that the warning and lockout system he would design as safe in 1986 was available in 1962, when the product was installed. The appellee's expert, on the other hand, testified the design suggested by appellant's expert was not desirable and, in some respects, was more likely to produce harm and that he was unaware that this product introduced in 1922, with more than 75,000 units in use, had ever had a failure attributable to a design defect.

This was an extremely well tried case and in all respects the legal issues were clearly presented to the jury and their function was to apply the law to facts that were easily understood and related to their common knowledge and experience. The issues raised on appeal were either matters of law, properly ruled on by the trial court, or jury questions on which we should not substitute our judgment for that of the jury.

Judgment affirmed.

KELLY, J., concurs in the result.

BROSKY, J., files a dissenting opinion.

BROSKY, Judge, dissenting:

I must respectfully dissent. I concur in appellant's claim that the trial court's jury instruction on assumption of the risk misstated the law, and constitutes reversible error.

A trial judge has wide latitude in charging a jury, as long as the language used adequately and fully conveys the law applicable to the case. *Seewagen v. Vanderkluet*, 338 Pa.Super. 534, 545, 488 A.2d 21, 26 (1985). Not every misstatement of the law is grounds for reversal. The appellate court must consider the charge in its entirety and determine whether the error was prejudicial to the complaining party. *Reilly By Reilly v. Southeastern Pa. Transp. Authority*, 507 Pa. 204, 489 A.2d 1291, 1305 (1985).

In *Bascelli v. Randy, Inc.*, 339 Pa.Super. 254, 488 A.2d 1110 (1985), this Court explained the doctrine of implied assumption of the risk. If a person knows that a product is defective and voluntarily proceeds to use the product, his actions constitute a defense to an action for strict products liability. *Id*, 339 Pa.Superior Ct. at 264, 488 A.2d at p. 1115.

Moreover, our courts have consistently stated that the plaintiff must have known of "the specific defect" which caused his injury. *Walasavage v. Marinelli*, 334 Pa.Super. 396, 408, 483 A.2d 509, 515 (1984). *See also Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893, 901 (1975) (plaintiff precluded from recovery only if he knows of

specific defect); *Ferraro v. Ford Motor Co.*, 423 Pa. 324, 223 A.2d 746, 748 (1966) (plaintiff unaware of specific defect so elements of defense not present); *Davis v. Dwyer Ind., Inc.*, 548 F.Supp. 667, 670 (E.D.Pa.1982) (plaintiff precluded from recovery if he knows of the specific defect).

However, use of the term "defect", with its mechanical and technological connotations, has caused much confusion among members of the bench and bar. Some have argued that a plaintiff is aware of a specific defect only if he understands the mechanical process which causes the item to be dangerous. This interpretation is an overly technical misstatement of the law. For assumption of the risk to apply, a plaintiff needn't understand the mechanical process, but must be subjectively aware of the nature, character, and extent of the danger posed *by the specific attribute* which is allegedly defective; this requires more than a general awareness by the plaintiff that the product is somehow dangerous. *Ferraro*, supra; *Crance v. Sohanic*, 344 Pa.Super. 526, 530, 496 A.2d 1230, 1232 (1985).

For example, in *Crance*, a visitor to a home was attacked and bitten by a dog belonging to another visitor. The injured party had been warned to be careful around the dog, but had not been told of its propensity to bite. Our Court ruled that an instruction on assumption of the risk was unwarranted. The plaintiff had had a general awareness that the dog might be dangerous, but had not known of the specific danger of biting posed by the animal. *Id.*, 344 Pa.Superior Ct. at 530, 496 A.2d at 1232.

Similarly, in *Ferraro*, the plaintiff's truck had had problems with locking wheels, as well as with a dislodging of the accelerator pedal. However, he had continued to use the vehicle until the two malfunctions occurred simultaneously, causing an accident in which he was injured. The Supreme Court found that assumption of the risk was inapplicable. The plaintiff had not been specifically aware of the danger that the two problems might occur at the same time. *Ferraro*, supra, 223 A.2d at p. 748.

Finally, in *Davis*, the plaintiff sued the manufacturer of a plastic material used to form a strip curtain in a car wash,

for injuries he had suffered when someone had driven through the curtain. The plaintiff had been standing behind the curtain. He claimed that the product was defective because it was opaque and thus, the other driver had not been able to see him. The court held that the plaintiff had assumed the risk of standing behind the curtain. He had been aware of the specific defect which had caused his injury, i.e. that a person could not see through the curtain. Therefore, he had known of the specific danger caused by the specific defect at issue. The court explained that the plaintiff need not have known "the technological cause of the defect." *Davis,* supra.

In the instant case, the court's jury charge provided in pertinent part:

> For you to find that a plaintiff assumed the risk of his injury, you must find that the plaintiff was aware of the danger presented by defendant's product and voluntarily proceeded to encounter the danger. *The plaintiff must have realized the danger, but not necessarily the specific defect itself, just the danger.* (Emphasis supplied.)

This charge misstates the law and, based upon the facts of this case, constitutes prejudicial error. Appellant's claim was that the capacitor in question was defective due to the failure of the fuses to automatically deactivate upon opening of the lid, and that the *specific danger* posed by this defect *was the danger of electrical flashover.* Thus, for appellant to have assumed the risk in this case, he would have had to have known of the *specific danger of flashover.* The above charge, however, would have left the jury with the impression that appellant need only have had a general awareness that the live fuses were dangerous if touched, to have assumed the risk of injury. This impression was misleading. If appellant thought he was safe from danger unless he actually touched a fuse, he was unaware of the specific danger presented.

This is not to say that appellant need have understood the mechanical process by which electricity "arcs", or the variables involved in "arcing", such as humidity, atmospheric

pressure, insulation of the electrical source, the shape of the approaching object, or even the precise distance at which an "arc" can occur, in order to have assumed the risk. He need only have known that the possibility of "arcing" was presented by his situation.

This Court has previously recognized that the dangers presented by actually touching a live electrical source, and by coming close enough to an electrical source so as to permit flashover or "arcing", are two distinct dangers, which present distinct theories of causation.

In *Books v. Pennsylvania Power and Light Co.*, 362 Pa.Super. 100, 523 A.2d 794 (1987), the plaintiff filed a trespass action against PPL for injuries he had sustained when the dump trailer he had been operating either came into contact with, or came too close to, some overhead power lines owned by PPL, thereby electrocuting him. PPL then joined Mack Trucks and Hill Manufacturing Co., alleging that Mack and Hill had failed to affix a warning on their products indicating the danger of raising the dump trailer "in the vicinity of overhead electrical transmission lines." *Id.*, 523 A.2d at p. 795. The trial court denied PPL's motion for summary judgment, but entered summary judgment in favor of Mack and Hill on the basis that the plaintiff had admitted, in deposition testimony, that he had known of the danger of electrocution presented *by contact with* the lines. In reversing, our Court noted the following:

> *From the inception of the case, plaintiff advanced alternate theories of how the accident occurred: either the equipment came into contact with the power lines, or the equipment was somehow electrified by the lines.* PPL advanced the same alternate theories when, in its complaint joining Mack and Hill to the action, it alleged that Mack and Hill should have placed warnings on their products of the danger of operating the equipment in the vicinity of power lines. *The trial court recognized the importance of the alternate theories when it agreed that plaintiff assumed the risk of contact, but denied PPL's motion for summary judgment because the accident could have occurred when electrical current arced*

*from the power lines to the equipment.* This theory would not require the equipment to come in contact with the power lines. *However, the trial court disregarded this possibility when it found that a warning would have been limited to the danger of contact with the power lines. The trial court was unduly restrictive when it created such a warning since PPL alleged that the warning should have been broader and included the danger of working near the power lines.*

*There is evidence in the record before us from which a jury could find the plaintiff raised the dump trailer near power lines. Whether the electrical charge that injured plaintiff was the result of the trailer coming into contact with the power lines or was the result of the phenomenon known as arcing is a material fact that is yet to be determined.* The trial court recognized this when in its opinion, it noted that, "electricity may have somehow 'arced' from the power lines to the truck bed as the dumping trailer approached the lines." Trial court's op. at 4. *Although plaintiff testified that he was aware of the danger from contact between the trailer and the power lines, there is no evidence in the record to suggest that he was aware of the danger in allowing the trailer to be operated near the power lines.* Because there is no evidence to suggest that plaintiff was aware of the danger of operating the dump trailer near the power lines, a genuine issue of material fact exists as to whether the type of warning suggested by PPL would have caused plaintiff to act differently.

*Id.,* 523 A.2d at pp. 798–99. (Emphasis supplied.)

While the *Books* holding pertains to the erroneous entry of summary judgment on the "failure to warn" question, it cannot be overlooked that the holding is premised upon the fact that distinct theories of causation are presented by the contact theory, and the flashover or "arcing" theory. As I find the reasoning of *Books* persuasive, I would find, as did the *Books* panel in dicta, that the theories are distinct for purposes of assumption of the risk in the current context as well.

The majority, of course, makes much of the fact that appellant would have had to have come so close to the fuses for flashover to occur so as to be virtually touching them anyway, which would not have been reasonable behavior on the part of a skilled electrician with thirty years of experience and a general knowledge of "arcing". This, however, is not the issue in assumption of the risk. If appellant should have realized the danger, but did not, he did not assume the risk, but was contributorily negligent. *Carrender v. Fitterer*, 310 Pa.Super. 433, 456 A.2d 1013, 1015 (1983), *rev'd on other grounds*, 503 Pa. 178, 469 A.2d 120 (1983). To assume the risk, a person must actually know of its existence, and not merely possess general knowledge from which he should have reasonably ascertained the danger presented. *Id.*

As the trial court's instruction on assumption of the risk would have permitted the jury to conclude that appellant had assumed the risk, even if unaware of the specific danger of flashover, I find prejudicial error. I would reverse and remand for a new trial.