Charles HADAR, Appellant,

v.

AVCO CORPORATION and J &
M Machinery Company,
Inc. Appellee,

v.

Margaret Basista, Appellee.

Superior Court of Pennsylvania.

Argued May 18, 2004.

Filed Sept. 21, 2005.

Bradley S. Tupi, Pittsburgh, for Hadar, appellant.

Michael J. Kearney Jr., Pittsburgh, for AVCO Corp.

Kenneth T. Newman, Pittsburgh, for J & M Machinery.

BEFORE: ORIE MELVIN, TODD, and McCAFFERY, JJ.

OPINION BY McCAFFERY, J.:

¶ 1 Appellant, Charles Hadar ("Hadar"), appeals from the order entered in the Court of Common Pleas of Westmoreland County granting summary judgment in favor of Appellees, Avco Corporation ("Avco") and J & M Machinery Company, Inc. ("J & M"). Upon thorough review, we conclude that a material issue of fact remains concerning whether Hadar fully appreciated the specific risk involved in operating an Avco New Idea Model 300 corn picker, such as to preclude summary judgment. Accordingly, we reverse and remand for proceedings consistent with this opinion.

¶ 2 The pertinent facts and procedural history underlying this appeal are as follows.[1] On January 18, 2000, Hadar was seriously injured while operating a corn picker manufactured by Avco in 1962, thirty-eight (38) years earlier. Hadar was picking corn as a favor for a neighbor, Margaret Basista, on Basista's property. Basista had purchased the corn picker in a "used" condition in 1991, approximately nine (9) years earlier, from J & M. Hadar was "somewhat" familiar with the operation of a mechanical corn picker.[2] (Hadar Deposition Testimony ("D.T."), 11/5/02, at 51, R.R. at 143a). He had operated Basis-

---

1. On appeal from this grant of summary judgment, we review the facts in the light most favorable to Hadar as taken from the pleadings, depositions, answers to interrogatories, admissions and any affidavits. See Porter v. Joy Realty, Inc., 872 A.2d 846, 849 (Pa.Super.2005) (quotation omitted).

2. The "operator" drives a tractor, which pulls the corn picker and a wagon behind the corn picker, which catches the corn. This particular corn picker operates by gathering cornst-

alks through "snapping" rollers in the front of the machine. These rollers pull the ears of corn from the cornstalk and the ears then fall into the husking bed where the "husking" rollers remove the husks. (See Hadar D.T. at 51, 66; R.R. at 143a, 158a). The "husking" rollers spin at a top speed of 540 r.p.m., although preferable speed is in the 300 level of r.p.m.s. (Wallace McDougall Deposition Testimony, 7/11/03, at 73).

ta's corn picker on one occasion prior to the day of the accident after someone else had picked the majority of the corn.[3]

¶ 3 On the day he was injured, Hadar had been operating the corn picker for approximately twenty to thirty minutes when he noticed there was no corn coming out from the back of the corn picker and going into the wagon. He got off of the tractor without turning off the power to the corn picker because, Hadar reasoned, if he had shut down the power takeoff, he would not have been able to detect the problem as the corn picker would not have been running. The intake or "snapping" rollers in the front of the corn picker appeared to be working fine. When Hadar walked in between the wagon and the corn picker, however, he noticed that the corncobs were bunched up and stuck instead of moving through the "husking" rollers. Hadar then picked a cornstalk more than three feet in length and started to push on the corncobs on top of the "husking" rollers in order to straighten them out. Hadar believed he could let go if the cornstalk got stuck and that he was safe using a three-foot plus cornstalk to push the ears. Unfortunately, when the corncobs broke loose, the "husking" rollers pulled the cornstalk Hadar was holding, as well as his hand up to his wrist, into the corn picker. Rescue personnel had to cut the machinery and use jacks to split the rollers apart in order to remove Hadar's arm from the machine. (Hadar D.T. at 51, 62–64, 86–97, 123; R.R. at 143a, 154–56a, 178–89a, 284a).

¶ 4 Hadar initiated a products liability lawsuit against Avco and J & M alleging strict liability in Count I and negligence in Counts II and III. (Hadar Amended Complaint, filed 2/10/03). In Count I, Hadar alleged theories of manufacturing de-

fect, design defect, and inadequate warnings. (*Id.* at ¶¶ 31–35). Avco later filed a complaint joining Basista as an additional defendant. Following discovery, all defendants filed motions for summary judgment asserting, *inter alia,* that Hadar had assumed the risk of injury. After permitting additional discovery, the trial court granted the motion, and dismissed Hadar's complaint with prejudice. The court reasoned that "Hadar voluntarily assumed the risk of the specific injury he suffered when he attempted to unclog the corn picker by using the 3-foot corn stalk and by [sic] doing so while the tractor was still in operation with the power takeoff engaged." (Trial Court Opinion, dated November 4, 2003, at 6). Hadar timely appealed, raising the following issue for our review:

DID APPELLANT CHARLES HADAR ASSUME THE RISK OF HIS INJURIES BY ATTEMPTING TO CLEAR THE HUSKING ROLLS OF A MECHANICAL CORN PICKER BY USING A THREE FOOT–PLUS CORNSTALK?

(Hadar's Brief at 4).

¶ 5 When reviewing the propriety of an order granting summary judgment, this Court must determine whether the record (1) establishes that the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury. Pa.R.C.P. 1035.2 *Note.* Summary judgment should be entered only in those cases which are clear and free from doubt that the moving party is entitled to judgment as a matter of law. *Bullman v. Giuntoli,* 761 A.2d 566, 569 (Pa.Super.2000) (quotation omitted); *Dansak v.*

---

**3.** Hadar had also operated a corn picker once in the mid to late 1980's on his own farm to pick approximately five acres of corn. (Hadar D.T. at 44–45; R.R. at 136–37A).

*Cameron Coca–Cola Bottling Co.*, 703 A.2d 489, 492 (Pa.Super.1997) (quotation omitted). "[W]here there is evidence that would allow a jury to find in the nonmoving party's favor, summary judgment should be denied and the case should proceed to trial." *Porter*, 872 A.2d at 848–49. We are not bound by the trial court's conclusions of law. *Grandelli v. Methodist Hospital*, 777 A.2d 1138, 1144 (Pa.Super.2001) (quotation omitted). Our scope of review is plenary, and we apply the same standard of review as the trial court. *Id.*

¶ 6 In the case *sub judice*, Hadar proffers that the inquiry whether a plaintiff has assumed the risk of his injuries should not be decided as a matter of law except where it is beyond question that he voluntarily and knowingly proceeded in the face of an obvious danger. Specifically, he asserts that "attempting to clear a husking machine with a three[-] foot-plus cornstalk does not translate into assuming the risk that the cornstalk will become entangled in the husking rolls and pulled with such force that one would be unable to release his grip on it." (Hadar's Brief at 19). We agree.

 ¶ 7 Well-settled law in this Commonwealth provides that a manufacturer or seller will be held "strictly liable if a defect in its product causes injuries to a user. A product is defective if it is unsafe for its intended use." *Burch v. Sears, Roebuck and Company*, 320 Pa.Super. 444, 467 A.2d 615, 618 (1983) (citations omitted). To ultimately prevail in a products liability case, a plaintiff must prove that (1) the product is defective, (2) the defect existed when it left the defendant's hands, and (3) the defect caused the plaintiff's injury. *Schindler v. Sofamor, Inc.*, 774 A.2d 765, 771 (Pa.Super.2001) (citation omitted); *see also* Restatement (Second) of Torts, § 402A (1965). The threshold question of whether the product is defective may be shown in two ways: proof of a manufacturing defect or proof of a design defect. *Schindler, supra.* "A subcategory of design defect includes inadequate warning, to the user or consumer, of the defect or dangerous propensity of the product." *Ellis v. Chicago Bridge & Iron Company*, 376 Pa.Super. 220, 545 A.2d 906, 909 (1988) (citation omitted).

 ¶ 8 An affirmative defense in a products liability action is that the plaintiff assumed the risk of his injury. Assumption of the risk has been defined as an apprehension of a specific danger, "followed by a conscious decision to tempt fate and accept what fate may bring, which then occasions injury," and it is a complete bar to recovery. *Bullman, supra* at 570. "[O]ne of the problems in an assumption of risk analysis is determining what the plaintiff knew and whether the plaintiff's course of action was voluntarily and deliberately taken." *Howell v. Clyde*, 533 Pa. 151, 620 A.2d 1107, 1110 (1993).

> Preliminary and deliberate conduct done with an awareness of the **specific** risks inherent in the activity is a proper basis for implying assumption of risk. Conduct close in time and place to the accident, on the other hand, while it may contain an element of voluntary risk-taking, does not demonstrate a deliberate abandonment of the right to complain [as in an assumption of risk case], but rather is better judged by its reasonableness, that is, by negligence principles.

*Id.* at 1110, n. 7 (quotation omitted) (emphasis added).[4] If the defendant asserts

---

4. "[I]f despite the inapplicability of the [assumption of the risk] doctrine, the plaintiff's negligence contributed to the sustaining of injury, the apportionment of responsibility will follow naturally under comparative negligence law" at trial in a suit alleging negli-

assumption of the risk as a defense, that defendant has the burden of showing the **subjective** awareness of the defect by the injured plaintiff. *Ellis, supra* at 915 (citing *Staymates v. ITT Holub Industries,* 364 Pa.Super. 37, 527 A.2d 140 (1987) (emphasis added)).

⬛ ¶ 9 Pennsylvania appellate decisions "reflect a reluctance to find assumption of the risk applicable unless it is quite clear that the **specific risk** that occasioned injury was both fully **appreciated** and voluntarily **accepted**." *Bullman, supra* at 571 (collecting cases).[5] "[T]o grant summary judgment on the basis of assumption of the risk it must first be concluded, as a matter of law, that the party consciously appreciated the risk that attended a **certain endeavor**, assumed the risk of injury by engaging in the endeavor despite the appreciation of the risk involved, and that the injury sustained was, in fact, the same risk of injury that was appreciated and

assumed." *Id.* at 573 (emphasis added). The appreciation of a **general** risk is not sufficient to prevent a case from going to the jury. *Id.* at 572. Rather, "the risk of injury from the transaction that actually took place must be so immediately apparent as to be equivalent to an appreciation and acceptance of that risk and a relinquishment of the right to complain." *Id.* (citing *Long v. Norriton Hydraulics, Inc.,* 662 A.2d 1089 (Pa.Super.1995)).

⬛ ¶ 10 In the case *sub judice,* Hadar concedes that he did not want to place his hands near the "husking" rollers as he knew this to be dangerous. He argues, however, that this general risk, of which he admits knowledge, is not the specific risk he eventually encountered. Indeed, when asked at his deposition whether the rollers had grabbed the stalk immediately prior to the accident, Hadar testified that

gence. *Bullman, supra* at 569, n. 2. *See also Frey v. Harley Davidson Motor Company,* 734 A.2d 1, 8 (Pa.Super.1999) (reiterating that once court decides that the assumption of the risk doctrine does not bar the plaintiff's claim, the jury is to be charged only on comparative negligence) (quotation omitted).

5. *Compare Carrender v. Fitterer,* 503 Pa. 178, 469 A.2d 120 (1983) (determining no question as to whether the injured party knew of the risk of slipping when she admitted that she saw the ice next to her car, appreciated the danger that she might fall, and chose to step onto the ice instead of moving her car to a clear spot in the parking lot), *and Mackowick v. Westinghouse Electric Corporation,* 373 Pa.Super. 434, 541 A.2d 749 (1988) (en banc ) (agreeing evidence supported jury finding that trained and experienced electrician fully understood specific risk of pointing screwdriver into energized capacitor resulting in electrical flash burn), *and Frey v. Harley Davidson Motor Company, Inc.,* 734 A.2d 1 (Pa.Super.1999) (holding trained and licensed motorcycle rider assumed the risk as a matter of law when he drove motorcycle with knowledge of the specific defective condition) *with Craley v. Jet Equipment & Tools, Inc.,* 778 A.2d 701 (Pa.Super.2001) (agreeing with the

trial court that woodworker did not assume the risk of having his hand pulled into vacuum machine propeller where testimony revealed 1) plaintiff had no knowledge of the machine's powerful suction capability and 2) that plaintiff would not have placed his hand near the portal had he known) *and Bullman, supra* (concluding visitor to home under construction did not appreciate risk of falling through insulation board covering porch, precluding summary judgment, even though she may have assumed certain risk in crossing plank over open excavation ditch to get to the porch) (collecting cases), *and Books v. Pennsylvania Power & Light Company,* 362 Pa.Super. 100, 523 A.2d 794 (1987) (holding issue of material fact remained where dump trailer operator admitted knowledge of risk of contacting power lines, but record contained no evidence of knowledge of risk of operating trailer near power lines), *and Burch, supra* (determining evidence supported jury finding that the plaintiff did not voluntarily assume the risk by placing his hand near clogged rotor blade of mower to remove grass where the plaintiff believed his hand to be in a safe position).

they had not done so.[6] From Hadar's perspective, the obvious hazard was placing his hand into the operating machinery. However, his testimony indicated that he had no appreciation of the risk in using a three-foot plus cornstalk to push on the corncobs on top of the "husking" rollers to straighten them out. He alleges that his hand was pulled into the "husking" rolls so quickly that he did not even have time to let go of the cornstalk. (Hadar D.T. 123, R.R. at 215a). Accordingly, despite the fact that there were other perils in addition to putting his hand directly into the machinery, they were not fully appreciated, and thus, they could not have been voluntarily assumed. *See Bullman, supra; Books, supra.*

¶ 11 Hadar believed that he was taking adequate safety precautions by using the three-foot cornstalk to straighten out the ears of corn above the "husking" rollers. Using a cornstalk of that length, he believed he was a safe distance from any moving parts, he did not believe he was at risk, nor did he realize he would not be able to let go in time before being pulled into the rollers. Specifically, he testified:

6. At his deposition, Hadar was asked:

Q: Pushing at the corncobs.[sic] How long were you back there pushing at the corncobs?
A: Not very long.
Q: Was it a minute, two minutes?
A: Maybe a minute or so.
Q: And as you were pushing the corncobs, would those moving rolls grab your cornstalk and you would have to pull it back out real quick?
A: No. I was just pushing along the top of it like just to straighten them out to keep them from rolling down through.
Q: Those moving rolls that were moving [sic], were they grabbing at the end of your cornstalk?
A: I didn't put it down that far.
Q: You didn't put it down that far because you didn't want your cornstalk coming in contact with those moving rolls?
A: I didn't want them pulling it in.

Q: Did you understand that if that cornstalk got stuck ... or got pulled into the husking rolls that you wouldn't be able to let go of that cornstalk?

* * * *

A: I didn't believe that I wouldn't be able to let it go to—I thought I was safe using a three-foot cornstalk. I thought if I—you know, it wouldn't have pulled my hand in. I thought I could let it go. I never thought it would be any different.

(Hadar D.T. at 123, R.R. at 215a).

¶ 12 Whether or not he knew of the specific danger in light of his experience and assumed the risk or whether he acted as a reasonable person under the facts of this case is a jury question.[7] *See Mackowick v. Westinghouse Electric Corporation*, 373 Pa.Super. 434, 541 A.2d 749, 750–51 (1988) (*en banc*) (stating "[a]ssumption of the risk frequently occurs with persons who have extensive experience and training and, therefore, take greater chances than persons who are either laymen or not so experienced").[8] In addition, Appellees'

Q: .... What happened next?
A: Well, they broke loose. And when they broke loose, somehow my hand ended up in it.
(Hadar D.T. at 92; R.R. at 184a).

7. We conclude that Appellees' characterization of Hadar as "very experienced in farming and corn picking operations" (Avco's Brief at 4), is simply belied by the record.

8. In *Mackowick, supra,* the appellant was an experienced electrician of more than thirty years, injured when he pointed a metal screwdriver into an energized capacitor box resulting in an explosive electrical flash, which caused serious burns. This Court reasoned that it was inconceivable that an electrician with the training and experience of Mackowick would not realize that arcing could occur under exactly the circumstances involved in that case. *Id.* at 750.

defense required the trial court to find that Hadar generally accepted all danger associated with working near the corn picker, which was not clear from the record which we reviewed. *See Books, supra.*

¶ 13 Based upon the foregoing analysis, we opine that Avco and J & M failed to establish that their right to summary judgment was clear and free from doubt. Accordingly, we reverse the trial court's November 4, 2003 order granting summary judgment and remand for further proceedings.

¶ 14 Order reversed; case remanded. Jurisdiction relinquished.

¶ 15 Judge ORIE MELVIN files a dissenting statement.

## DISSENTING STATEMENT BY ORIE MELVIN, J.:

¶ 1 I respectfully dissent. "[A] trial court's order on summary judgment will only be reversed where the court committed an error of law or clearly abused its discretion." *Continental Insurance Co. v. Schneider,* 582 Pa. 591, 600–01, 873 A.2d 1286, 1292 (2005). Based upon a careful review of the record including Appellant's deposition, I agree with the thorough and well-reasoned opinion of the trial court finding no genuine issue of fact exists and concluding that Appellant voluntarily and knowingly assumed the risk of the injury he sustained. *See* Trial Court Opinion, 11/4/03, at 10–16. Accordingly, I would affirm the order granting summary judgment in favor of Appellees.