349 So.2d 948 (1977)
Richard Wayne STEVENS, Plaintiff-Appellant,
v.
REX CHAINBELT, INC., Defendant-Appellee.
No. 11422.
Court of Appeal of Louisiana, First Circuit.
July 11, 1977.
Rehearing Denied August 24, 1977.
Writ Refused October 14, 1977.
Michael W. McKay, Baton Rouge, for plaintiff.
Wood Brown, III, New Orleans, for defendant.
Before SARTAIN, COVINGTON and LOTTINGER, JJ.
SARTAIN, Judge.
In this products liability case plaintiff appeals from an adverse jury verdict. We affirm.
On March 22, 1974, plaintiff sustained serious injuries to his right hand and fingers when they became entangled in a fan belt on a cement mixer manufactured by the defendant.
The mixer, which is portable and known as Model No. 6-S, was manufactured by the defendant in 1949-51. The motor is housed in a metal enclosure. Access thereto is through a side panel which hinges from the *949 bottom. The fan belt which caused the injury may be likened to a fan belt in a typical automobile.
While there is some conflict in the testimony as to how the accident occurred, we will accept plaintiff's version. He states that because there was no exterior cutoff switch to stop the motor, it was necessary to take a board or stick and press a metal tab against the motor housing to short out the magneto. He had picked up a stick to do just this when he tripped over a water pipe near the machine. This caused him to fall forward. The side panel was down at this time and his right hand went through the opening and came in contact with the fan belt.
Plaintiff contends that the mixer was improperly designed and therefore defective in four particulars. (1) There was no exterior kill switch. (2) There was no guard over the fan belt. (3) The side panel should have been hinged from the top so that the weight of the panel would keep it closed. (4) There was no interlock device, that is a safety feature which would have stopped the motor when the panel door was opened and the motor exposed.
The record amply supports the following findings of fact: The machine was purchased second hand by plaintiff's employer and during the course of the latter's ownership it had undergone numerous repairs with certain modifications. When the mixer was manufactured it contained a fan guard. This very guard was found on the ground near the mixer after the accident. It was also equipped with interior and exterior kill switches. The latter had long since been discarded by either the present or a previous owner.
An interlock device can best be described as a mechanism that will kill the motor when a moving part is exposed. If such a device were placed on an automobile, it would kill the motor of the vehicle when the hood is raised. Many heavy industrial machines are now equipped with one. However, plaintiff's own expert conceded that there were no interlock devices in 1949 and 1950.
With respect to the side panel, the testimony shows that it could not be closed at the time of the accident because several hoses which were attached to the motor were routed through this particular opening. Plaintiff's expert testified that the design of the panel was defective because had the panel been hinged from the top, it would have prevented exposure of the motor in spite of the presence of the hoses. The unalterable fact remains that the attachment of the hoses in the manner utilized by the owner at the time of the accident was a modification not contemplated in the original design.
For liability to attach in a products liability case, it is essential that the defect complained of exist at the time the product left the possession of the manufacturer. Frey v. Travelers Insurance Company, 271 So.2d 56 (La.App. 4th Cir. 1972), writs refused, 273 So.2d 840 (La.1973).
The verdict of the jury clearly reflects the clear preponderance of the evidence and the law applicable thereto.
Accordingly, the judgment of the district court is affirmed at appellant's costs.
AFFIRMED.