640 A.2d 1289

**Kimberly DAVIS**

v.

**BERWIND CORPORATION, Bepex Corporation and Boldt Industries Inc.**

**Appeal of BERWIND CORPORATION and Bepex Corporation.**

Superior Court of Pennsylvania.

Argued Nov. 17, 1993.

Filed March 25, 1994.

Reargument Denied May 19, 1994.

---

344

346

Gary B. Cutler, Philadelphia, for appellant.

Bruce Baron, Philadelphia, for Davis, appellee.

Angelo L. Scaricamazza, Jr., Philadelphia, for Boldt, appellee.

Before CIRILLO, FORD ELLIOTT and BROSKY, JJ.

CIRILLO, Judge:

This is an appeal from an order of the Court of Common Pleas of Philadelphia County denying defendants' post-trial motions for a new trial or judgment notwithstanding the verdict and entering judgment against defendants Berwind Corporation (Berwind) and Bepex Corporation (Bepex). We reverse.

Plaintiff Kimberly Davis was employed as a quality control inspector for Keystone Equity Meats (Equity) in Folcroft, Pennsylvania. Equity supplies hamburger patties to McDonald's restaurants. Ms. Davis was responsible for operating a blender in the meat formulation system. The blender, a Reitz blender, was manufactured by Bepex. It mixed lean and fat cow and steer meats into regulation quality as specified by McDonald's. In addition to operating the Reitz blender to mix the meat, Ms. Davis was responsible for testing the

mixture to assure that it fell within a range of certain fat content specifications. Once the specifications were met, Ms. Davis would then operate the blender on its discharge mode to release the meat into a hopper where it would be carried on a conveyor belt to the next phase of the processing.

On the day in question, Ms. Davis lost three fingers on her right hand while operating the blender on its discharge mode; she apparently had reached into the area of the discharge doors to remove meat which had accumulated in the hopper. Her hand then came into contact with the rotating blades.

Equity's meat formulation system was designed and manufactured by Boldt Industries, Inc. (Boldt). Equity purchased the equipment in 1979. The Boldt system incorporated the Reitz blenders manufactured by Bepex, a company owned by Berwind at the time.

The Bepex blenders were manufactured and sold with an interlocking electropneumatic safety device. This safety device required an operator to use both hands to depress valves to open the discharge doors and release the meat; if the valves were released, that is, if both hands were taken off the valves, the discharge doors would automatically close. The purpose for this safety device was to prevent an operator's hands from coming anywhere near the rotating blades.[1]

In addition to the electropneumatic safety device, Bepex included on the blender visible warnings instructing operators to keep their hands and fingers away from the discharge doors. A decal was affixed to the blender, warning: **DANGER, KEEP FINGERS OUT OF DOOR OPENINGS.** This warning was included on the Rietz blender when it was manufactured. Further, in the manual provided by Bepex, Bepex warned against removing the interlock device:

> Do not operate unless guards and safety devices are in place and are working. The electropneumatic control is considered an integral part of blender and should not be removed

1. The safety system interlocks the driver motors with the discharge door controls so that if properly installed, both of the operator's hands must be on the controls in order for the discharge doors to open.

or modified to preclude the safety interlock feature ...
Both discharge job button and valve control handles must
be held in position by the operator during the entire dis-
charge cycle. This interlocking feature forces the operator
to use both hands to keep discharge doors open and screws
running.

Bepex included the product manual with blenders sold to
Boldt. Boldt, after purchasing the blenders, included the
product manual with the system it sold to Equity.[2]

Shortly after Equity installed the meat formulation equip-
ment, Equity removed the safety device from the blenders.
By removing the safety device, employees could operate two
Reitz blenders at one time; the operators did not have to
continually keep both hands occupied in order for the dis-
charge door to open. Although the modifications created a
risk that the operators' hands or fingers might be caught in
the blades of the blender without the shield of the discharge
door, the alteration enabled Equity to increase production
without increasing labor force costs.

Following Davis's accident, she filed a product liability
action against Berwind Corporation, Bepex Corporation and
Boldt. A jury trial commenced before the Honorable Ethan
Allen Doty. Although Davis conceded that Equity had re-
moved the safety device and that the accident could not have
occurred without the removal of the safety device, she none-
theless contended that it was foreseeable that the device
would be removed. Thus, Davis argued, Bepex had failed to
provide adequate warnings in light of the foreseeability that
the purchaser would remove the safety device. Specifically,
Davis argued that Bepex failed to provide warnings that the
blades would continue to rotate after the machine was turned

---

2. David Lewis Burson, Bepex's Product Engineer Manager, testified
that Bepex's rationale for including this language in the manual was to
assure that

> people understood that the purpose of the discharge controls were
> not just operator convenience; that they were for safety purposes and
> that they shouldn't be changed for convenience, that they were
> required to keep the machine safe.

R.R. 927–928.

off. This argument was advanced despite the warning in the Bepex blender product manual that purchasers not remove the electropneumatic safety device.

At the close of Davis's evidence, Berwind and Bepex filed a motion for non-suit. The court denied this motion and the trial proceeded. Berwind and Bepex defended on the theory that that Equity's removal of the safety devices was the proximate cause of Davis's injury. The case was submitted to the jury on Section 402A theory of liability against Berwind and Bepex as manufacturer of the blender and a section 402B claim against Boldt as the seller of the blender. The trial court refused to amend a jury charge so that Boldt could be identified as the manufacturer of the meat formulation system for purposes of determining whether Boldt should be held liable under section 402A.

Appellants also contended that Davis's attorney improperly insinuated that Berwind and Bepex were placing blame on an absent party. The court instructed the jury as follows: "Equity is not present for reasons which do not concern you." The court refused to elaborate as to why Equity was not present.

The jury returned a verdict in favor of plaintiff Davis and defendant Boldt, and against defendants Berwind and Bepex. The jury awarded damages in the amount of $400,000.00 against Berwind and Bepex.

Berwind and Bepex filed timely post-trial motions, and Davis filed a request for delay damages. Following briefing and argument, the court denied Berwind's and Bepex's post-trial motions and granted Davis's request for delay damages in the amount of $213,725.92. This appeal followed. Berwind and Bepex raise the following issues:

(1) Whether the trial court erred in refusing to enter judgment n.o.v. for appellants where the evidence presented at trial, viewed in the light most favorable to the verdict winner, was insufficient as a matter of law to support the jury's verdict that the product was defectively manufactured?

(a) whether the trial court erred in refusing to enter judgment n.o.v. where the jury found appellants strictly liable for failure to warn even though plaintiff failed to prove that she would have altered her conduct in the presence of a warning?

(b) whether the trial court erred in refusing to enter judgment n.o.v. where the jury's finding was contrary to the charge given by the trial court and contrary to the law of this Commonwealth?

(2) Where the undisputed evidence at trial established that defendant Boldt was the designer and manufacturer of a meat formation system which incorporated blenders manufactured by appellants, did the lower court err in refusing to grant a new trial where it erroneously charged the jury that Bepex was the manufacturer of the product and Boldt was the seller?

(3) Whether the trial court erred in refusing to instruct the jury that the plaintiff's employer was not a defendant in this case because of the immunity provided under the Workers' Compensation Act after plaintiff's counsel opened the door to such instruction by making statements in its closing arguments regarding the absence of plaintiff's employer in the case?

 When reviewing a trial court's order denying a motion for a new trial, this court must determine whether the trial court clearly and palpably abused its discretion or committed an error of law which controlled the outcome of the case. *Stevenson v. General Motors Corporation*, 513 Pa. 411, 521 A.2d 413 (1987). The standard of review when considering an order denying judgment n.o.v. is the same standard employed by the trial court: the appellate court must determine whether there was sufficient competent evidence to sustain the verdict, granting the verdict winner the benefit of every inference which can reasonably be drawn from the evidence and rejecting all unfavorable testimony and inferences. *Ingrassia Construction Co., Inc. v. Walsh*, 337 Pa.Super. 58, 486 A.2d 478 (1984). Judgment n.o.v. may be granted only

in a clear case where the facts are such that no two reasonable minds could fail to agree that the verdict was improper. *Id.*

The appellants maintained throughout trial, and now on appeal, that Ms. Davis intended to clear the meat from the front of the discharge doors without using the shovels or hooks provided by Equity for this task, and, since she had no intention of placing her hand *inside* the door, an additional warning that the ribbons of the blender would continue to turn after the power was turned off (a delay factor of which Ms. Davis was apparently unaware prior to the accident) would have made no difference. The reason for this, appellants argue, is because the warnings would have affected her behavior only if she had intended to place her hands *inside* the discharge door.

Appellants also argue that it was admitted by plaintiff that her employer, Equity, had removed the safety system and that had the safety device been in place, the accident would not have occurred. Appellants contend that Equity's removal of the safety device constituted a substantial post-sale alteration and, therefore, it should be relieved of liability.

In response to this argument, Ms. Davis maintains that the manufacturer is liable nonetheless because removal of the safety system was foreseeable. Essentially, Ms. Davis reasons that Bepex should have anticipated the removal of the safety device and, therefore, should have included additional warnings on the machine, aimed at the operator, warning that the blades or ribbons would continue to rotate after the machine was turned off.

Additionally, appellants argue that the verdict was against the court's instruction. Appellants contend that although the jury was instructed on 402A liability, it was not instructed on the foreseeability of the modification by Equity.

With respect to their claim for a new trial, appellants argue that the court erroneously charged the jury that Bepex was the manufacturer and Boldt was the seller. Appellants maintain the Bepex blender was a component part of the the meat formulation system manufactured by Boldt and, therefore,

Boldt was erroneously characterized as a seller under section 402B of the Restatement (Second) of Torts.

A review of the record reveals that there is no dispute that Ms. Davis appreciated the danger of placing her hand near the discharge doors. Ms. Davis was trained on the operation of the blender and made aware of the dangers. Ms. Davis admitted that there were warnings on the discharge door to keep hands away from the door. She testified that she did not intend to place her hands in the doors and, in fact, believed that her right hand was approximately three inches away from the door when it was "pulled in."

Section 402A of the Restatement (Second) of Torts, adopted as the law of the Commonwealth in *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966), provides that "one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if:

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer *without substantial change* in the condition in which it is sold."

This rule is applicable even though

(a) the seller has exercised all possible care in the preparation and sale of his product, and,

(b) the user of consumer has not bought the product from or entered into any contractual relation with the seller.

\* \* \* \* \* \*

Restatement (Second) of Torts § 402A (1965) (emphasis added).

The judicial tendency in products liability cases is to retain negligence principles. *Cf. Azzarello v. Black Bros. Co., Inc.*, 480 Pa. 547, 555, 391 A.2d 1020, 1025 (1978); *Dambacher by Dambacher v. Mallis*, 336 Pa.Super. 22, 59–60, 485 A.2d 408, 428 (1984). In approaching a products liability case, however,

we must be conscious of the social policy underlying strict product liability, or, as Professor Prosser termed it, the "social adjustment" required to assign liability without fault. W. Prosser, *Law of Torts* at 495 (4th ed. 1979).

■ The theory underlying products liability law is allocation of loss. Plaintiffs, inevitably, will be injured by products. The party in the better position to absorb that loss is the manufacturer or seller. That loss is a cost of doing business. *See Azzarello, supra; see also Walton v. Avco Corporation,* 530 Pa. 568, 574, 610 A.2d 454, 458 (1992); *Sweitzer v. Dempster Systems,* 372 Pa.Super. 449, 453, 539 A.2d 880, 882 (1988); *Lobianco v. Property Protection, Inc.,* 292 Pa.Super. 346, 359–62, 437 A.2d 417, 424–26 (1981).

■ Nonetheless, it was never the purpose of section 402A to impose absolute liability.[3] A manufacturer is a guarantor of its product, not an insurer. *See Azzarello,* 480 Pa. at 551–55, 391 A.2d at 1023–24; *Ellis v. Chicago–Bridge & Iron Co.,* 376 Pa.Super. 220, 225, 545 A.2d 906, 909 (1988); *see also Dambacher by Dambacher v. Mallis,* 336 Pa.Super. 22, 61, 485 A.2d 408, 429 (1984) (proposing that distinction between "guarantor" and "insurer" be clarified in jury instructions). The various defenses and caveats proposed by manufacturers are attempts to shift the risk of loss or liability. In a pure product liability forum, the determination of whether a manufacturer should bear that risk is a judicial function. *See Azzarello, supra; see also Jordon by Jordon v. K–Mart Corporation,* 417 Pa.Super. 186, 188–92, 611 A.2d 1328, 1330–31 (1992) (whether the risk of loss is to be placed on the supplier in question is a question of law for the court; holding the trial court correctly applied the *Azzarello* threshold in determining the strict liability claim based on product design); *Ellis,* 376 Pa.Super. at 234, 545 A.2d at 913 ("It is a judicial function to decide whether, under plaintiff's averment of the

3. The American Law Institute, in drafting section 402A of the Restatement (Second) of Torts, limited the imposition of strict product liability to cases where the product "is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."

facts, recovery would be justified; and only after this judicial determination is made is the case submitted to the jury to determine whether the facts of the case support the averments of the complaint."). *Cf.* E. Wertheimer, *Azzarello Agonistes: Bucking the Strict Products Liability Tide,* 66 Temple L.Rev. 419 (1993) (commentator stresses that the *Azzarello* decision has allowed the courts of Pennsylvania to retain product liability law in its doctrinally pure form by providing a framework for the judicial screening function).

■ In order to prevail in a product liability case, a plaintiff must establish: (1) that the product was defective; (2) that the defect existed when it left the hands of the defendant; and (3) that the defect caused the harm. *Berkebile v. Brantly Helicopter Corporation,* 462 Pa. 83, 98, 337 A.2d 893, 898 (1975).

> While an inadequate warnings case has been characterized as a kind of defective design case, *Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206 (1971), the term "defective" does not easily fit when applied to warnings. For in a warnings case it is not alleged that there was anything wrong with the product's *design as such.* Rather a "defect" is supposed to exist because the user was not adequately instructed on *how to use* the product *as the product was designed.*

*Dambacher by Dambacher v. Mallis,* 336 Pa.Super. at 57, 485 A.2d at 426 (emphasis in original).

■ In failure to warn cases, recovery is sought on the theory that the product is "unreasonably dangerous" when "unaccompanied by a warning with respect to nonobvious dangers inherent in the use of the product." *Ellis,* 376 Pa.Super. at 908, 545 A.2d at 908. In *Berkebile,* the Supreme Court of Pennsylvania explained:

> A "defective condition" is not limited to defects in design or manufacture. The seller must provide with the product every element necessary to make it safe for use. One such element may be warnings and/or instructions concerning the use of the product. A seller must give such warning and instructions as are required to inform the user or consumer of the possible risks and inherent limitations of his product.

*Berkebile,* 462 Pa. at 100, 337 A.2d at 902 (citing Restatement (Second) of Torts, § 402A, comment h). The jury applies this standard to the facts once the trial court has determined that the facts alleged would support a finding that the product was defective without adequate warnings. Thus, the initial determination is a question of law to be answered by the trial judge. *See Azzarello,* 480 Pa. at 558, 391 A.2d at 1026; *see also Walton v. Avco Corp.,* 530 Pa. 568, 610 A.2d 454 (1993); *Mackowick v. Westinghouse Electric Corporation,* 525 Pa. 52, 575 A.2d 100 (1990); *Jordon, supra; Ellis, supra; D'Antona v. Hampton Grinding Wheel Co., Inc.,* 225 Pa.Super. 120, 310 A.2d 307 (1973).

Davis maintains that even though Equity removed the safety device, this alteration was foreseeable. Davis's theory of liability, inadequate warnings, is premised on the argument that Bepex should have anticipated this alteration and, therefore, should have provided additional warnings.

Initially, we must determine whether the trial court properly concluded that the facts averred and presented by the plaintiff were sufficient to make out a prima facie case in strict liability, and, therefore, whether the case was properly submitted to the jury. *See Azzarello,* 480 Pa. at 558, 391 A.2d at 1026; *Mackowick,* 525 Pa. at 54, 575 A.2d at 102; *Jordon,* 417 Pa.Super. at 190, 611 A.2d at 1331; *Ellis,* 376 Pa.Super. at 227, 545 A.2d at 910; *Carrecter v. Colson Equipment Co.,* 346 Pa.Super. 95, 101 n. 7, 499 A.2d 326, 330 n. 7 (1985); *see also D'Antona, supra* (test for determining whether substantial change in manufacturer's product has occurred is whether manufacturer could have reasonably foreseen the alteration; this determination is for the factfinder unless the inferences are so clear that a court can say as a matter of law that a reasonable manufacturer could not have foreseen such change).

The purpose of the Reitz blender was to mix large quantities of meat; the blender had the capacity to mix 2,000 pounds of meat at one time. The parties did not dispute that this was a dangerous piece of machinery. A dangerous prod-

uct in the stream of commerce, however, does not automatically place liability upon the manufacturer. Strict product liability is appropriate only when there exists a manufacturing defect or a defective design, the inadequate warning claim falling within the latter category. *Azzarello, supra; Bascelli v. Randy, Inc.*, 339 Pa.Super. 254, 488 A.2d 1110 (1985).

The evidence was undisputed that Equity removed the interlocking safety device and that the manufacturer had warned against removing the device. "Where a warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition ..." Restatement (Second) of Torts, Section 402A, comment j. Further, a material change in the product severs the chain of causation where the plaintiff would not have been injured had the product remained in its unaltered state. *See* Restatement (Second) of Torts, Section 402A, comment g. *See also Sweitzer, supra* (one who sells a product in a defective condition unreasonably dangerous is subject to liability for physical harm caused thereby if the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold) (citing Restatement (Second) of Torts § 402A(1)(b) (1965)); *Burch v. Sears, Roebuck and Company*, 320 Pa.Super. 444, 467 A.2d 615 (1983) (same); *Bascelli v. Randy, Inc.*, 339 Pa.Super. 254, 488 A.2d 1110 (1985) (same).

Where the product has reached the user or consumer with substantial change, the question then becomes whether the manufacturer could have reasonably expected or foreseen such an alteration of its product. *Bascelli, supra; Eck v. Powermatic Houdaille*, 364 Pa.Super. 178, 527 A.2d 1012 (1987); *D'Antona, supra*. "If the manufacturer is to effectively act as the guarantor of his product's safety, then he should be held responsible for all dangers which result from foreseeable modifications of that product." *Eck*, 364 Pa.Super. at 192, 527 A.2d at 1019 (quoting *Merriweather v. E.W. Bliss Company*, 636 F.2d 42 (3d Cir.1980)). Foreseeability is

a question for the factfinder unless the inferences are so clear that a court can say as a matter of law that a reasonable manufacturer could not have foreseen the change. *D'Antona,* 225 Pa.Super. at 125, 310 A.2d at 310 (citing *O.S. Stapley Co. v. Miller,* 103 Ariz. 556, 447 P.2d 248 (1968) and *Mazzi v. Greenlee Tool Co.,* 320 F.2d 821 (2d Cir.1963)); *see also Ellis, supra.*

Pursuant to Pennsylvania law, courts have held that a manufacturer or seller is not liable for injuries caused by a defective product if the defect was created by a substantial alteration in the product amounting to a supervening or intervening cause of the plaintiff's injuries. *See, e.g., Smith v. Hobart Manufacturing Company,* 302 F.2d 570 (3d Cir.1962) (applying Pennsylvania law, the circuit court found that the trial court erred in sending to the jury the question of whether the manufacturer could have anticipated that employer would remove the safety guard from meat grinder; there was evidence that the employer removed the guard to speed up the grinding process); *Speyer, Inc. v. Humble Oil & Refining Company,* 403 F.2d 766 (3d Cir.1968) (applying Pennsylvania law, the court found that substantial change in the condition of a gasoline pump precluded recovery against the manufacturer on a strict liability theory; imposition of strict liability requires that the product reach the ultimate user or consumer without substantial change in the condition in which it was sold); *Schreffler v. Birdsboro Corp.,* 490 F.2d 1148 (3d Cir. 1974) (applying Pennsylvania law, the circuit court found that trial court properly directed verdict for manufacturer of transfer table where substantial modifications were made by employer after the product left the manufacturer's control; because of employer's modifications, design defect, if any, could not be proximate cause of the accident as a matter of law, and, in addition, employer's failure to implement its safety recommendations and its unilateral decision to modify the transfer table did not concur with any conduct of the manufacturer and was the superceding cause of plaintiff's injury); *Hanlon v. Cyril Bath Company,* 541 F.2d 343 (3d Cir.1975) (applying Pennsylvania law, manufacturer of press brake would not be

strictly liable for injury to operator's hand where employer had substituted the pedal switch); *Rooney v. Federal Press Company*, 751 F.2d 140 (3d Cir.1984) (applying Pennsylvania law, judgment on the record in favor of manufacturer of power press was proper where, as sold, press was equipped with dual palm button control and employer later added a foot pedal control); *Thompson v. Motch & Merryweather Machinery Co.*, 358 Pa.Super. 149, 516 A.2d 1226 (1986) (manufacturer of sheet metal press not liable for defective design where purchaser of press altered machine in a manner that could not have been reasonably foreseen by manufacturer that made it possible for press operator to reach material while press was descending).

Other jurisdictions, too, have refused to impose liability where the product undergoes substantial alterations after leaving the hands of the manufacturer. *See, e.g., O.S. Stapley Co. v. Miller*, 103 Ariz. 556, 447 P.2d 248 (1986) (where plaintiff injured her foot on propeller of outboard motor, court reversed the trial court's finding that boat manufacturer was liable as a matter of law; the seller of the boat had altered the steering mechanism to accommodate an outboard motor larger than the one for which the boat was designed; the court stated that it was apparent that the product had been substantially altered and that it was possible the alteration was the proximate cause of the accident); *Valdez v. J.D. Diffenbaugh Co.*, 51 Cal.App.3d 494, 124 Cal.Rptr. 467 (1975) (manufacturer of industrial oven and conveyor system relieved of liability where purchaser and installing contractor made substantial modifications); *Willeford v. Mayrath Co.*, 7 Ill.App.3d 357, 287 N.E.2d 502 (1972) (manufacturer of farm elevator was not liable for injury to boy who became entangled in power takeoff shaft where elevator was not in condition as produced by manufacturer, but was assembled by a dealer on order of the purchaser without safety devices); *De Armond v. Hoover Ball & Bearing, Uniloy Division*, 86 Ill.App.3d 1066, 42 Ill.Dec. 193, 408 N.E.2d 771 (1980) (summary judgment in favor of manufacturer of molding machine was proper where it was shown that interlock safety doors had been removed by em-

ployer); *Stevens v. Rex Chainbelt, Inc.,* 349 So.2d 948 (La. App.1977) (manufacturer of cement mixer not liable for injury to operator's fingers when they were caught in exposed fanbelt; employer's subsequent alteration was unforeseeable as a matter of law); *Plante v. Hobart Corporation,* 771 F.2d 617 (1st Cir.1985) (applying Maine law, judgment in favor of manufacturer of potato grinding machine affirmed where plaintiff's employer had removed safety interlock from grinding machine; defendant had no duty to provide additional warnings as to obvious danger where lack of such additional warnings could not have been proximate cause of accident since warning affixed to grinder specifically cautioned against using hands to unclog grinder and both plaintiff and his employer were aware of danger involved in such procedure); *Westerberg v. School District,* 276 Minn. 1, 148 N.W.2d 312 (1967) (where plaintiff's arm was severed when it became entangled in a water extractor, manufacturer was held not liable because safety features provided by the manufacturer were not maintained by the user; court stated that the manufacturer was not required to anticipate or foresee that a user will alter the product so as to render its safety devices ineffective); *Robinson v. Reed–Prentice Division of Package Machinery Company,* 49 N.Y.2d 471, 426 N.Y.S.2d 717, 403 N.E.2d 440 (1980) (plaintiff's judgment reversed in action against manufacturer of molding machine for injury to operator's hand where original adequate safety gate was substantially modified by purchaser-employer and such modification was the proximate cause of the injury, however foreseeable such modification might have been); *Lovelace v. Ametek, Inc.,* 111 A.D.2d 953, 490 N.Y.S.2d 49 (3d Dept.1985) (summary judgment in favor of manufacturer of commercial laundry water extractor was proper in a strict liability action against manufacturer when material in extractor caught plaintiff's arm and pulled him into it; three safety devices, which would have prevented injury, had been removed by someone other than manufacturer); *Morgan v. Biro Manufacturing Company,* 15 Ohio St.3d 339, 15 OBR 463, 474 N.E.2d 286 (1984) (in products liability action alleging defective design and failure to warn, filed against manufacturer of meat grinder, worker's

arm was mangled by the meat grinder; applicable statute provided that manufacturer shall be liable only for injury that would have occurred if product had been used in its original, unaltered and unmodified condition and parties agreed that had original protective guard not been removed, plaintiff would not have been injured); *Tuttle v. U.S. Slicing Machine Co.*, 335 F.2d 63 (4th Cir.1964) (operator of commercial meat grinder, from which a third party removed protective grill, was injured when the operator used his hand to push meat into the grinder instead of using a wooden pusher provided for that purpose; court affirmed summary judgment in favor of manufacturer); *Davis v. Globe Machine Manufacturing Co.*, 102 Wash.2d 68, 684 P.2d 692 (1984) (manufacturer of glue-spreading machine held not liable where machine had been modified after sale by removal of the safety switch).

In this case, the interlocking safety system was an integral part of the product, even though the product was operational without the safety device. This was stated in the product manual and explained at trial by Bepex's Product Engineering Manager. *Cf. Sweitzer, supra* (in action against manufacturer of emptying device attached to garbage truck, expert testimony established that the design of the safety mechanism was not compatible with the environment of the garbage truck, i.e., vibrations, corrosions, rain and other liquids, and the act of continuous loading or unloading can cause bends or corrosions). The jury found it was foreseeable to Bepex that the safety device would be removed, in part because Bepex had warned against removal. Thus, the jury found that warnings in addition to those on the doors of the blender were required, that is, warnings which warned the operator in the event that the safety device was removed and which warned more specifically than "Danger, keep fingers away from door opening."

We must determine as a matter of social policy the bounds of the manufacturer's responsibility, beyond providing a safety device, warnings to keep away from dangerous portions of the product, and warnings to buyers not to remove the safety device. Does a manufacturer have a duty to warn in anticipation that the user will alter the product so as to undermine its

safety precautions? Though the blender was operational without Bepex's safety device, and workers were able to operate two blenders simultaneously without the safety device, a shift in responsibility to the manufacturer in this case is an endorsement of Equity's actions, leaving no incentive, economic or otherwise, for the buyer/employer to heed the manufacturer's safety precautions or the Commonwealth's health and safety laws.[4] The threshold question of whether this case was appropriate for a jury determination under strict product liability, must, therefore, be answered in the negative. *Azzarello, supra; Mackowick, supra; Ellis, supra; D'Antona, supra.*

As illustrated by the various cases cited above, in many workplace injuries it is the employer, not the manufacturer, that is the culpable party.[5] Workers' compensation laws, however, frequently leave the manufacturer as the sole defendant. *See* 77 P.S. § 72; 2A A. Larson, *The Law of Workmen's Compensation* (1983 & Supp.1985); Butler, *The Worker, A Defective Product, An Injury: Who Pays and Why, A Solution in Ohio,* 50 U.Cinn.L.Rev. 31 (1985). In our judgment, sending a case of this type to the jury prompts the jury to engage in what has been described as "redesigning the product in a negative/hindsight fashion and tailoring the defect to the specific facts of the case." *Dawson v. Chrysler Corp.,* 630 F.2d 950 (3d Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981). *See generally* M. Gallub, *Limiting the Manufacturer's Duty for Subsequent Product Alteration: Three Steps to a Rational Approach,* 16 Hofstra L.Rev. 361 (1988) ("The court's reliance on foreseeability allows the jury to view the original design with clear hindsight as if the

---

4. Section 25–6 of the Health and Safety Act, 43 P.S. § 25–6, provides:

 **§ 25–6. Removal of Guards—**
 No person shall remove or make ineffective any safeguard, safety appliance or device attached to machinery except for the purpose of immediately making repairs or adjustments, ...
 43 P.S. § 25–6.

5. The analysis of section 112(D) of the Model Uniform Product Liability Act determined that thirty-nine percent of product alterations result from the conduct of employers. Model Uniform Product Liability Act, § 112(D) (1979).

machine had not been materially altered. In addition to placing minimum emphasis on the alteration, the court allows the jury to evaluate the original design by analyzing the dangers of the product in its altered condition.").

Where a deep pocket manufacturer or seller is the only defendant, a jury verdict will likely favor the injured plaintiff. As a result, the limitations on manufacturer liability provided in section 402A are rendered ineffectual, and the path is cleared for absolute liability.

 Bepex did what was required of a responsible manufacturer; it provided a safety device, it provided additional warnings on the discharge doors of the blender, and it included a product manual warning against removal of the safety device. Warnings which are ignored, whether by buyer or user, are not inadequate simply because it is possible that one chooses to ignore them. *See* Restatement (Second) of Torts, § 402A(1)(b). Equity's unilateral decision to remove the safety interlock was a "substantial change in the condition in which the [blender] was sold," within the meaning of section 402A. Davis's argument that the warnings were inadequate in light of the foreseeability that the employer would remove the interlock device is, therefore, not tenable. Where a third party seriously interferes with the original design of the product, the risk of loss cannot be shifted to the manufacturer. To do so leaves the manufacturer at the whim of a third party's decision to forfeit safety measures.

The evidence established that Davis's injuries were caused by the removal of the safety device and that the accident would not have occurred had the product not been altered. Under these circumstances, the inferences are so clear that the court should have concluded in its threshold determination that Bepex could not have reasonably expected or foreseen the removal of the safety device. *See Mackowick, supra; D'Antona, supra; see also Hobart, supra; Schreffler, supra; Rooney, supra. Accord: Erickson v. Sears, Roebuck & Co.,* 240 Cal. App.2d 793, 50 Cal.Rptr. 143 (1966); *De Armond, supra; Stevens, supra; Lovelace, supra; Tuttle, supra.* The funda-

mental error, therefore, was the trial court's failure to resolve the question as a matter of law. *See Mackowick,* 525 Pa. at 58–59, 575 A.2d at 104.

■ We hold that where a product endures substantial alteration after leaving the manufacturer's door, such as removal of a safety device, and where that alteration is against the warnings of the manufacturer, the alteration rises to the level of an intervening or superceding cause of the injury, breaking the chain of causation and relieving the manufacturer of liability. These efforts to contain the Commonwealth's product liability doctrine with the framework set forth in *Azzarello* and the limits imposed by section 402A is consistent with sound social policy.

We conclude, therefore, that the trial court erred in refusing to grant appellant's motion for judgment n.o.v. Based on this disposition, it is unnecessary to address the questions raised by appellants with respect to their motion for a new trial.

Accordingly, judgment is vacated and the case is dismissed.

FORD ELLIOTT, J., files a dissenting opinion.

FORD ELLIOTT, Judge, dissenting:

I must respectfully dissent from the majority's conclusion that the trial court erred in refusing to grant appellant's motion for judgment n.o.v. In reaching this conclusion, the majority states:

> We hold that where a product endures substantial alteration after leaving the manufacturer's door, such as removal of a safety device, and where that alteration is against the warnings of the manufacturer, the alteration rises to the level of an intervening or superceding cause of the injury, breaking the chain of causation and relieving the manufacturer of liability.

Majority opinion at 363.

I find that such a holding serves to eliminate "foreseeability" from the test utilized to determine manufacturer liability for injuries caused, at least in part, by post-sale modifications

and that such a holding is contrary to established law in this Commonwealth.

The majority, citing federal case law, frames the applicable test as follows: "Pursuant to Pennsylvania law, courts have held that a manufacturer or seller is not liable for injuries caused by a defective product if the defect was created by a substantial alteration in the product amounting to a supervening or intervening cause of the plaintiff's injuries." (Majority opinion at 357, *citing Smith v. Hobart Manufacturing Co.*, 302 F.2d 570 (3d Cir.1962).)

Unfortunately, the majority's recitation of the test falls short of setting forth both parts of the test. Foreseeability is also an integral part of the test, as this court made clear in several Pennsylvania cases including *Thompson v. Motch & Merryweather Machinery*, 358 Pa.Super. 149, 516 A.2d 1226 (1986). *Thompson*, as with the present case, was a post-sale modification case. The manufacturer, in *Thompson*, argued that the question of substantial alteration should not have been submitted to the jury. This court disagreed, noting that the test for determining when a manufacturer is relieved of liability for a post-sale modification is as follows:

> If the alteration could not reasonably have been foreseen by the manufacturer *and* if it were a superseding cause of the user's injury, the manufacturer would be relieved of liability even if there had been design defects existing at the time the press was delivered to the purchaser.

*Thompson* at 155, 516 A.2d at 1229 (emphasis added). Clearly, foreseeability is the first part of this two-part, conjunctive test. Furthermore, in *Thompson* and several other cases, this court has continuously noted that the question of foreseeability is generally a matter for the trier of fact to decide.

> ... [t]he test in such a situation is whether the manufacturer could have reasonably expected or foreseen such an alteration [in its product]; such a determination is for the fact-finder unless the inferences are so clear that a court can say as a matter of law that a reasonable manufacturer could not have foreseen the change.

*Eck v. Powermatic Houdaille,* 364 Pa.Super. 178, 190, 527 A.2d 1012, 1018 (1987), *quoting from D'Antona v. Hampton Grinding Wheel Co.,* 225 Pa.Super. 120, 310 A.2d 307 (1973).

Presently, the majority's opinion endorses a test that totally eliminates foreseeability in post-sale modification cases. I find such a conclusion inconsistent with prior holdings of this court in *Sweitzer v. Dempster Systems,* 372 Pa.Super. 449, 539 A.2d 880 (1988); *Eck, supra; Burch v. Sears, Roebuck & Co.,* 320 Pa.Super. 444, 467 A.2d 615 (1983); and *D'Antona, supra.* Those cases clearly indicate that foreseeability is a key component of the test and that issues concerning foreseeability should, in most instances, be resolved by a jury. For example, *Sweitzer, supra,* also involved a situation where an employer modified a product by removing a safety device. The injured employee maintained that the removal of the safety device, known as a container lock, was foreseeable by the manufacturer. The employee contended that the manufacturer should have equipped the emptying mechanism with an interlock system which would have prevented the operation of the lifting mechanism if the container lock was removed or not in place. The trial court failed to charge the jury that the manufacturer could be liable for injuries relating to post-sale modifications, when those modifications were foreseeable.

On appeal, the *Sweitzer* court recognized that foreseeability is an integral part of post-sale modification cases. After reviewing the evidence presented at trial, the *Sweitzer* court concluded that "[t]he jury should have been instructed that foreseeability was a factor to be considered in determining whether Dempster would be held responsible for injuries resulting from postsale product modification." *Sweitzer,* 372 Pa.Super. at 455, 539 A.2d at 883.

Presently, I find that the facts in this case likewise warranted submission of the issue of foreseeability to the jury, and the trial court correctly declined to disturb those findings. There was certainly sufficient competent evidence from which the jury could have concluded that it was foreseeable the safety feature could be by-passed. For example, the manufacturer, in its instruction manual, warned against removing the inter-

lock safety device. Such a warning presumes the possibility that the device could be removed. The manufacturer also placed a warning label on the machine which read: DANGER, KEEP FINGERS OUT OF DOOR OPENINGS. Again, such a warning would indicate that there were circumstances which would bring a person's fingers in contact with the blades. Additionally, the jury was presented with evidence that the controls for the interlocking electropneumatic safety device were shipped separately from the unit and had to be installed by the employer. This certainly raises the possibility that the safety device may not be utilized.

In sum, all of these facts provide a sufficient basis for reasonable jurors to conclude that the modification to appellant's blender was foreseeable. It is then left for the jury to determine whether, in light of the foreseeable, post-sale modification, appellant's blender was defective for failing to contain a warning that the blades continued to rotate even after the power was shut off. The jury obviously concluded that the product was defective for failing to warn about the continued rotation of the blades. Given that a judgment n.o.v. may only be granted in a clear case where the facts are such that no two reasonable minds could fail to agree that the verdict was improper, I find the majority's decision clearly erroneous. There are facts of record to support a finding of foreseeability by the jury. Once foreseeability was established, it was not unreasonable for the jury to conclude that the blender was defective for failing to warn of the continued rotation of the blades.[1]

---

**1.** It is important to note that Davis' claim against appellants is premised upon a failure to warn of the continued rotation of the blades. Davis alleged that she turned off the power to the machine and then attempted to clear meat from the opening of the discharge chute. Because of the modification made by her employer, which enabled the discharge doors to remain open, the continuing rotation of the blades allowed Davis' hand to be "sucked up" into the blades. Appellants have argued that even if it was reasonable for the jury to determine the modification to the blender was foreseeable, any additional warning about the continuing rotation of the blades would not have prevented the accident in that it would not have altered Davis' conduct. Appellants' argument is completely contradicted by Davis' testimony at trial wherein she unequivocally stated that had she known the blades contin-

In *Eck, supra,* this court was requested to review a jury instruction on post-sale alterations.[2] The import of the challenged charge was strikingly similar to the majority's holding in this case. The jury charge in question in *Eck* read as follows:

A seller, manufacturer or distributor is responsible only for such defects as exists [sic] at the time the product leaves its control. The seller, manufacturer or distributor is not liable for defective conditions created by substantial changes in the product occurring after the product has been sold. So even if you find the saw in question was defective it is for you, the Jury, to then decide whether the defect originated at the time of the sale by the Defendant, Powermatic and Hermance or whether the defect originated as a result of the actions of Ernest L. Shumbat Company in removing the guard or failing to supply the manuals, and adding the shim. And I am going to read that again because I think you should hear it in a cohersive [sic] manner. Even if you find the saw in question is defective it is for you, the Jury, to decide whether that defect originated at the time the sale was made by the Defendant, Powermatic and Hermance, or whether the defect resulted as a result of the actions of Ernest L. Shumbat and Company by removing the guard, failing to supply the manuals and adding the shim. If you find that the shim was permanently fastened to the fence of the saw by Ernest L. Shumbat Company, Inc. or that its agents or employees ... constituted substantial change in

ued to rotate, after the power was shut off, she would have never put her hand anywhere near the discharge door. The jury obviously found Davis' testimony credible. This court is in no position to reassess Davis' credibility.

2. The post-sale modifications in *Eck* included the removal of a safety guard on the saw *and* the addition of a "shim" to the fence of the saw. While the changes to the saw in *Eck* were more substantial than those made to the blender in the case at bar, the *Eck* court still determined that foreseeability was a vital component of analyzing and determining a manufacturer's liability. Thus, while the removal of a safety feature *alone* can itself be considered a substantial change, such an alteration can oftentimes be considered foreseeable by the manufacturers particularly if such changes allow the equipment to better meet the production goals of the user.

the condition of the saw before it reached the Plaintiff then Hermance Machine Company and Powermatic are not liable to the Plaintiff's injuries. In other words, if you find that the fastening of the shim to the saw by Shumbat was a substantial change in the condition of the saw then the Defendants would not be liable. If you find that the removal of the guard and the failure to supply the guard to Barry Eck by Ernest L. Shumbat Company, Inc. constituted a substantial change in the condition of the saw before it reached Barry Eck then the Defendants Hermance and Powermatic are not liable for the Plaintiff's injuries if the Plaintiff's injuries were caused by the failure to have a guard. If you find the shim was permanently fastened to the fence of the saw by Ernest L. Shumbat or its agents or done in an improper manner then such alteration of the saw could constitute a substantial change in the condition of the saw.

*Eck*, 364 Pa.Super. at 182–83, 527 A.2d at 1014–15.

Noticeably absent from this jury charge, as with the majority's holding, is the concept of foreseeability. Both the jury charge in *Eck* and the majority holding in the instant case absolve a manufacturer of liability upon a showing of a substantial modification to the product and a cause-and-effect relationship between the modification and the injury. Both are silent as to foreseeability. In analyzing the jury charge, the *Eck* court found the charge erroneous because it lacked the foreseeability component. The issue was framed in light of Eck's motion for a new trial as follows:

Eck filed a motion for new trial in which he contended that the charge of the trial court on the issue of substantial change had been erroneous. He asserted specifically that the court should have instructed the jury that the defendants would not be relieved of liability if the alterations made by Shumbat to the saw were foreseeable.

*Id.* at 186, 527 A.2d at 1016. After analyzing several Pennsylvania cases involving liability for post-sale modifications, the *Eck* court recognized that "[t]hese decisions suggest that the concept of 'foreseeability' is a *significant factor* in determining

whether a manufacturer or seller will be held responsible for injuries resulting after post-sale modifications of a product have been made." *Id.* at 190, 527 A.2d at 1018 (emphasis added). Accordingly, because of the significance of the concept of "foreseeability" in post-sale modification cases, the *Eck* court concluded that a charge which did not contain that concept was erroneous as an incorrect statement of the law of Pennsylvania. *Id.*

Because I find the majority's holding as set forth on page 363 of the majority opinion an indistinguishable statement of the law as set forth in the charge specifically disapproved by *Eck*, I find the majority opinion to be inconsistent with the current state of the law in Pennsylvania.

Additionally, I note that the majority states that its holding comports with the guidelines of *Azzarello v. Black Bros. Co., Inc.,* 480 Pa. 547, 391 A.2d 1020 (1978), and sound social policy considerations. "These efforts to contain the Commonwealth's product liability doctrine within the framework provided by *Azzarello* and the limits imposed by section 402A are consistent with sound social policy." (Majority opinion at 363.) Again, I must disagree.

Any implication by the majority that its holding is somehow guided or mandated by *Azzarello* is misleading. *Azzarello* in no way calls for a limitation of or removal of the foreseeability concept in post-sale modification cases. Such an argument was raised and squarely rejected by this court in *Eck*.

> The defendant-appellees argue, however, that the viability of this line of authority has been undercut by the subsequent decision of the Pennsylvania Supreme Court in *Azzarello v. Black Brothers Co.,* 480 Pa. 547, 391 A.2d 1020 (1978). Their argument, stated syllogistically, is as follows: *Azzarello* precludes the injection of negligence principles into strict product liability actions; 'reasonable foreseeability' is a negligence concept; therefore, under *Azzarello*, the concept of foreseeability may not be used in a strict liability action to elucidate the responsibility of a manufacturer for injuries caused by a product which has undergone substantial alteration after leaving the manufacturer's control.

A similar argument was rejected by the United States Court of Appeals for the Third Circuit in *Merriweather v. E.W. Bliss Co.,* 636 F.2d 42 (3d Cir.1980). There, the trial court had refused to charge the jury that reasonably foreseeable changes in a product would not absolve the manufacturer of liability for injuries caused by that product. Instead, the jury was instructed on the issue of substantial change without any reference to reasonable foreseeability. In finding this instruction to be erroneous under Pennsylvania law, the Third Circuit stated:

> The court below ... apparently felt that *Azzarello* had, by implication, overruled [*D'Antona* and *Kuisis* [*v. Baldwin–Lima–Hamilton Corp.,* 457 Pa. 321, 319 A.2d 914 (1974)] and federal decisions which had followed them] and that, under *Azzarello,* a jury charge on substantial change could not be framed in terms of reasonable foreseeability. We disagree. As we previously noted, the Pennsylvania Supreme Court's decision in *Azzarello* simply deleted the phrase 'unreasonably dangerous' from jury instructions in product liability cases. It did not purport to address the question of substantial change at all. Moreover, following *Azzarello* this court has specifically approved jury charges in product liability cases which were framed in terms of reasonable foreseeability. *See, Baker v. Outboard Marine Corp.,* 595 F.2d 176, 183–184 (3d Cir.1979), (approving an instruction on superseding cause in a product liability case which incorporates reasonable foreseeability). *See also, Heckman v. Federal Press Co.,* [587 F.2d 612 (3d Cir.1978)]. Therefore we find no precedential basis for the district court's conclusion that *Azzarello* has implicitly deleted the phrase reasonably foreseeable from jury instructions on substantial change.

> *But more fundamentally, we find that the trial court's instruction was in error because it directly contradicted the policies underlying the Pennsylvania Supreme Court's decision in Azzarello. In Azzarello the court eschewed the use of the phrase unreasonably dangerous*

*in large part because it felt that that phrase improperly de-emphasized the duty of the manufacturer to act as the guarantor of his product's safety.* See Azzarello, supra, *480 Pa. at 559, 391 A.2d at 1027.* Were we to adopt the approach to the substantial change doctrine accepted by the district court in this case we would significantly undercut this policy. If the manufacturer is to effectively act as the guarantor of his product's safety, then he should be held responsible for all dangers which result from foreseeable modifications of that product. Yet under the view taken by the court below this would not occur. Rather, once the modification of the product was shown to be substantial the manufacturer would be excused from all liability for injuries caused by that product, even if that modification was clearly foreseeable. As a practical matter, therefore, the district court's decision broadens considerably the scope of the substantial change defense. Because the broadening of this defense is inconsistent with the concept of the manufacturer as the guarantor of his product, we feel that the charge given by the district court is in direct conflict with Azzarello.

*Id.* at 45–46.

*Eck,* 364 Pa.Super. at 190–92, 527 A.2d at 1018–19 (emphasis added). Applying this reasoning from the federal court, this court in *Eck* held that *"[A]zzarello* had no effect upon the established rule of law which requires consideration of 'foreseeability' in connection with a 'substantial change' defense." *Id.* at 192, 527 A.2d at 1019.

Interestingly, the language from *Merriweather v. E.W. Bliss Co.,* 636 F.2d 42 (3d Cir.1980), quoted favorably by the *Eck* court, clearly indicates that any analytical approach to post-sale modification cases which eliminates or diminishes the "foreseeability" concept, runs counter to the policy considerations underlying *Azzarello* and 402A in general. That notion is reinforced by the *Sweitzer* court, which noted:

The role of foreseeability in a product liability case is consistent with the broad and sound social policy underlying § 402A; that is, as between an innocent user of a product

and a manufacturer or seller who is engaged in the business of manufacturing or selling a product, risk of loss for injuries resulting from the use of a defective product shall be borne by the manufacturer and/or seller.

*Id.*, 372 Pa.Super. at 453, 539 A.2d at 882. Thus, it would seem to me that the majority's analysis is inconsistent with *Azzarello* and the social policies underlying 402A.

Finally, I do recognize that there must be concern for the bounds of manufacturer liability in product liability cases. We want to continue to encourage manufacturers to make safety improvements and warn of potential hazards. Furthermore, I wholeheartedly agree that in many workplace injuries it is the employer, not the manufacturer, that is the culpable party.[3] However, I cannot agree with the majority's statement that "[w]here a third party [i.e., employer] seriously interferes with the original design of the product, the risk of loss cannot be shifted to the manufacturer." (Majority opinion at 363.) This court, in cases such as *Eck*, has already balanced the inequities of a situation where a third party modifies a product after it is sold. That balance has resulted in the development of a test which encompasses the component of "foreseeability," and leaves questions relating thereto in the hands of the jury in most cases. This test serves to promote the social policies of strict products liability under 402A, chief among them being allocation of loss attendant the manufacture and use of unreasonably dangerous products. I agree with the majority that

---

3. In my opinion, the most fundamentally sound approach to allocating loss in post-sale modification cases, where the employer modifies the product either by-passing or removing safety features, would be to allow employers to be joined, in tort actions by employees, for such acts. As the majority notes in footnote 5 of its opinion, "thirty-nine percent of product alterations result from the conduct of employers." Obviously, it is the conduct of employers which social policy should seek to modify. However, under the current state of the law in this Commonwealth which provides a broad interpretation of the exclusivity provision of the Workmen's Compensation Act, employers suffer no liability even for intentionally removing, or by-passing, safety equipment. *See generally, Poyser v. Newman & Co.*, 514 Pa. 32, 522 A.2d 548 (1987). If an employee is injured, the employer's liability is limited to compensation payments (a fraction of wages). There is no exposure for tort damages. The loss must then be borne by either the injured employee or the manufacturer.

this case presents a difficult issue as to liability. However, this issue was resolved by the jury applying the appropriate test under applicable Pennsylvania law. That test includes foreseeability.

The analysis offered by the majority has "substantially altered" this test.

Accordingly, I dissent.