**Gary MALINOSKI, Plaintiff,**

v.

**GLASS EQUIPMENT DEVELOPMENT, INC., Defendant.**

No. 3:CV–93–0554.

United States District Court, M.D. Pennsylvania.

Sept. 15, 1994.

Nicholas Mattise, Scranton, PA, for plaintiff.

Gerald John Hanchulak, Scranton, PA, for defendant.

### MEMORANDUM

VANASKIE, District Judge.

In this action to recover damages for personal injuries, defendant Glass Equipment Development, Inc. (hereinafter referred to as "GED"), has moved for summary judgment on the basis of a claimed post-sale alteration to an allegedly defective manufacturing machine—a hot roll press used in the production of double pane windows. Because there are disputed issues of material fact as to whether (a) the alleged alteration was a causative factor in the accident, and (b) the foreseeability of the alteration, summary judgment will be denied.

### I.

This action arises out of an accident that occurred on October 24, 1989 during the course and scope of plaintiff's employment with Wenco Manufacturing Company ("Wenco"), a glass processing plant. One of the products produced by Wenco is a double pane window, which, according to plaintiff, is produced "by moving two pieces of glass separated by butyl (a rubbery plastic) on a moving rolling line through an oven, to heat the butyl, then over another short section of rollers and into a fixed rolled glass press to seal the window, after which it exits on another series of moving rollers." (Brief in

Opposition to Summary Judgment Motion (Docket Entry # 30) at 1.) At the time of the accident, plaintiff was attempting to clean butyl from the rolls of this production machine. As he was attempting to wipe away the butyl, his right hand was pulled into the rollers, resulting in a severe degloving injury to his right hand.

The roll press machine involved in plaintiff's accident had been manufactured and installed at the Wenco facility by GED in 1985. At the time of its installation, the roll press machine was equipped with a metal guard to which photoelectric cells were attached. If the photoelectric beam generated by the cells was interrupted, the machine was to shut down. The alignment of the photoelectric cells was tied to the alignment of the rollers for the roll press. When the rollers for the roll press were adjusted to accommodate different thicknesses of glass, the alignment of the photoelectric eyes moved with the adjustment of the rollers. Plaintiff claims that the purpose of the guard equipped with the photoelectric cells was "to prevent oversized pieces [of glass] from entering the press and being crushed." (Brief in Opposition to Defendant's Summary Judgment Motion (Docket Entry # 30) at 2.)

It is undisputed that this guard could be lifted from the entry side of the glass press and placed on top of the machine. The parties dispute whether the guard could be removed without breaking the photoelectric beam.

It is also undisputed that some time prior to plaintiff's accident, Wenco installed a switch on the roll press machine to override the photoelectric cell. In other words, the photoelectric beam could be deactivated by a switch. Plaintiff claims that the switch was installed "because Wenco often constructed window panes with breather tubes in them, which stuck up from the frame itself, and often tripped the photoelectric eyes, causing frequent production delays." (Brief in Opposition to Summary Judgment Motion (Docket Entry # 30) at 3.)

At the time of plaintiff's accident, the guard in question had indeed been removed and placed on top of the roll press. It is unclear, however, whether the photoelectric beam had been deactivated.

## II.

This action was originally commenced by the filing of a writ of summons in state court on October 24, 1991. GED removed the action to this Court, invoking diversity jurisdiction under 28 U.S.C. § 1332.

Plaintiff is pursuing claims against GED based on products liability, negligence and breach of warranty theories. The specific claims of the plaintiff concern:

[T]he absence of a properly interlocked roll guard which would prevent operation without the guard in place, the absence of emergency stop switches in hazardous areas, the absence of a jog control, manual and otherwise, which would allow easy cleaning of the rolls, without the machine continuously running and without the guard on, but without danger to the person cleaning, and the absence of adequate instructions or warnings concerning proper and safe cleaning procedures, from the manual and the machine itself. [*Id.* at 4–5.]

GED moved for summary judgment on July 19, 1994. Briefing was completed on August 8, 1994, and this matter is now ripe for disposition.

## III.

Summary Judgment is appropriate if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56(c). In ascertaining whether there exists a genuine dispute as to a material fact, the Court must view the record in the light most favorable to the non-moving party. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3rd Cir.1993). The burden of demonstrating the absence of genuine issues of material fact rests with the moving party regardless of which party has the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d

265 (1986). Materiality is determined by the substantive law governing the issues raised by the parties. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In short, "[a] disputed fact is material if it would affect the outcome of the lawsuit." *U & W Industrial Supply v. Martin Marietta Alumina, Inc.,* 34 F.3d 180, 185 (3rd Cir.1994). Summary judgment may not be granted "if there is sufficient evidence for a jury to return a verdict in favor of the non-moving party...." *Id.*

Ascertainment of facts that are material to GED's summary judgment motion begins with the Pennsylvania law on products liability. Pennsylvania has adopted § 402A of the Restatement (2d) of Torts, which provides:

(1) On who sells any product in a defective condition unreasonably dangerous to the user or consumer ... is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer *without substantial change* in the condition in which it is sold. [Emphasis added.]

*See Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966).

GED claims that the installation of an on/off switch for the photoelectric beam constitutes such a substantial alteration to its product as to relieve it of any liability in this case. In support of its argument, GED relies on the decision of a divided panel of the Pennsylvania Superior Court in *Davis v. Berwind Corp.,* 433 Pa.Super. 342, 640 A.2d 1289 (1994).

GED's reliance on the majority opinion in *Davis,* assuming it to be consistent with Pennsylvania law and a proper " 'indicia of how the state's highest court would decide' " the issue, *Nowak v. Faberge USA, Inc.,* 32 F.3d 755, 758 (3rd Cir.1994), is misplaced. In *Davis,* plaintiff's employer had disabled an interlocking safety device designed to prevent an operator's hands from coming in contact with the rotating blades of a meat blender. The manufacturer had specifically warned against the removal of this interlock device. Plaintiff's liability theory was that the manufacturer "should have anticipated this alteration, and, therefore, should have provided *additional* warnings." 640 A.2d at 1296 (emphasis added). Judges Cirillo and Brosky determined that the question of the manufacturer's liability should not have been submitted to the jury, explaining that "where a product endures substantial alteration after leaving the manufacturer's door, such as removal of a safety device, and where that alteration is against the warnings of the manufacturer, the alteration rises to the level of an intervening or superseding cause of the injury, breaking the chain of causation and relieving the manufacturer of liability." *Id.* 640 A.2d at 1300.

Whereas the claim in *Davis* was based exclusively on a failure to warn theory under § 402A of the Restatement (2d) Torts, plaintiff in this case claims specific design defects not related to the question of whether the photoelectric cell could be rendered inoperative. In this regard, plaintiff claims a failure to warn or instruct concerning safe cleaning procedures, as opposed to a warning concerning deactivating the photoelectric cell.

It is also noteworthy that at the time of plaintiff's accident defendant was engaged in affixing one terminus of the photoelectric unit to the machine itself. It is undisputed that the guard in question could be removed, and plaintiff has presented sufficient evidence to support a conclusion that the guard could be removed without disturbing the photoelectric beam.

Another distinguishing feature is that the manual for the meat blender in *Davis* contained explicit warnings that the safety device should not be altered, whereas the manual in this case does not provide a similar warning. Indeed, plaintiff credibly maintains that the photoelectric eyes were intended to prevent insertion of the wrong size of glass pane into the roll press, and were not intended to prevent injury to operators. (*See* the manual for the roll press attached as Exhibit "A" to the Brief in Support of Defendant's Summary Judgment Motion (Docket Entry # 27).)

**312**

Plaintiff further argues that preclusion of liability on the basis of a claimed substantial alteration to the product is inappropriate "if the alteration would have been reasonably foreseeable to the manufacture...." (Brief in Opposition to Summary Judgment Motion (Docket Entry # 30) at 10.) It has indeed been recognized that "[i]f the manufacturer is to effectively act as the guarantor of his product's safety, then he should be held responsible for all dangers which result from foreseeable modifications of that product." *Merriweather v. E.W. Bliss Co.*, 636 F.2d 42, 45–46 (3rd Cir.1980).

More recently, however, an aversion to inclusion of foreseeability analysis in products liability claims has been expressed. *See, e.g., Metzgar v. Playskool, Inc.*, 30 F.3d 459, 464 n. 8 (3rd Cir.1994); *Pacheco v. Coats Co.*, 26 F.3d 418, 422 (3rd Cir.1994). There is no need to resolve at this time the question of whether foreseeability is an element of a substantial alteration defense. GED has conceded that "the question [is] whether the manufacturer could have reasonably expected or foreseen such an alteration of its product." (Brief in Support of Summary Judgment Motion (Docket Entry # 28) at 4.)[1]

 Foreseeability is generally a question for the fact finder. *See Davis*, 640 A.2d at 1297. Plaintiff has presented evidence suggesting that the installation of the on/off switch was to eliminate production problems caused when window panes with breather tubes were inserted into the roll press. This assertion supports plaintiff's contention that the modification was foreseeable. Plaintiff also argues that the alteration in question was reasonably foreseeable in light of the difficulty in cleaning the roll press with the guard and photoelectric eyes in place. Indeed, plaintiff argues that it is doubtful that

rolls could have been cleaned with the guard in place in any event. Under these circumstances, plaintiff has clearly presented an issue of fact on the foreseeability issue.

 Plaintiff also argues that a substantial alteration in the product may preclude liability only if there is a causal relationship between the injury and the alteration. *See Eck v. Powermatic Houdaille*, 364 Pa.Super. 178, 527 A.2d 1012, 1020 (1987). On this issue, it is unclear whether the photoelectric cell was deactivated at the time of plaintiff's accident. As noted above, plaintiff claims that the guard in question could be removed and placed on top of the machine without disturbing the photoelectric beam. Moreover, plaintiff alleges design defects that do not concern the location of the guard in question. Under these circumstances, issues of fact pertaining to causation preclude summary adjudication of GED's liability.[2]

**IV.**

GED has not demonstrated the absence of genuine disputes of fact concerning foreseeability and causation, which are material to preclusion of liability based upon a substantial alteration in the product. Accordingly GED's motion for summary judgment will be denied. An appropriate Order is attached.

---

1. In *Davis*, the majority similarly observed that "[w]here the product has reached the user or consumer with substantial change, the question then becomes *whether the manufacturer could have reasonably expected or foreseen* such an alteration of its product." 640 A.2d at 1297 (emphasis added). The *Davis* majority also endorsed the proposition that a manufacturer " 'should be held responsible for all dangers which result from foreseeable modifications of that product.' " *Id.* The majority holding in *Davis* thus appears to be very narrow—liability may not be imposed

upon a manufacturer where the manufacturer has warned against making a certain alteration and the plaintiff's claim is premised upon the alleged inadequacy of that particular warning or the manner in which it was communicated.

2. As noted above, plaintiff's action also rests upon a negligence theory. Thus, GED is not entitled to summary adjudication of this entire case in any event.